## COMMONWEALTH vs. EVERARD A. GENIUS.

Suffolk.  September 14, 1982. — December 7, 1982.

Present: WILKINS, LIACOS, ABRAMS. NOLAN, & LYNCH, JJ.

*Homicide. Insanity. Practice, Criminal,* Instructions to jury, Capital case.

In the circumstances, neither the decision by counsel at a murder trial not to assert the defendant's lack of criminal responsibility and to argue only the defendant's diminished capacity to appreciate what he was doing, nor the judge's failure, on his own motion, to give instructions concerning the defendant's lack of criminal responsibility created a substantial likelihood of a miscarriage of justice. [697-699]

Any deficiency in instructions to the jury at a murder trial, given pursuant to *Commonwealth* v. *Gould,* 380 Mass. 672 (1980), provided no basis for relief under G. L. c. 278, § 33E. [699-700]

Failure by the judge at a murder trial on his own motion to instruct the jury on automatism, that, if the defendant stabbed the victim while he was not conscious, he could not be responsible for his conduct, did not provide a basis for relief under G. L. c. 278, § 33E. [700-701]

INDICTMENT found and returned in the Superior Court Department on July 13, 1979.

The case was tried before *Brady,* J.

*Charles M. Burnim* for the defendant.

*Robert J. McKenna, Jr.,* Assistant District Attorney, for the Commonwealth.

WILKINS, J.  The defendant appeals from his conviction of murder in the first degree of one Lillie Mae Nesbitt. None of the issues argued in his appeal was raised by his trial counsel. His new appellate counsel, relying principally on G. L. c. 278, § 33E, argues that certain errors and omissions in the judge's instructions to the jury created a substantial likelihood of a miscarriage of justice requiring a new trial. We need decide the issues argued only in these terms. He

also argues, under G. L. c. 278, § 33E, that we should order a reduction of the verdict of murder in the first degree to a lesser degree of guilt. We affirm the conviction and see no basis for reducing the verdict.

On the evidence, the jury were warranted in finding that, on May 29, 1979, the defendant stabbed the victim, whom he had known for several years, in her apartment in the Dorchester section of Boston. That fact was not seriously in dispute at the trial. The defendant testified that he went to the victim's home at her request and that she pulled a knife and then a gun on him. He heard a click and remembered nothing from that moment until after he had left the victim's residence. A daughter of the victim witnessed major portions, but not all, of the stabbing incident. There was evidence that, after stabbing the victim, he pursued her up some stairs and stabbed her again several times. The defendant argued that he acted in self-defense.

The defendant presented an expert witness, a psychiatrist, who testified that the defendant was an extremely depressed, passive person with no history of violent action. He concluded that, out of panic, fear, and some anger at the victim, the defendant simply lost control. None of his examinations nor any circumstances of which the expert was aware suggested that, at the time of the stabbings, the defendant was "frankly mentally ill." He was not irrational or "crazy in any sense," although he was extremely agitated to the point of losing touch with the enormity of what he was doing. On cross-examination, the expert testified that the defendant was criminally responsible, although the defendant's state of mind was not consistent with the ability to calculate or understand the consequences of what he was doing.

The case was presented to the jury both on the theory of deliberate premeditation with malice aforethought and on the theory of extreme atrocity or cruelty. They were given the option of returning a manslaughter verdict, or, of course, a verdict of not guilty. The judge instructed the jury, consistent with *Commonwealth* v. *Gould,* 380 Mass. 672, 680-686

(1980), that (1) in considering the defendant's capacity deliberately to premeditate his acts, they could consider the defendant's mental illness, if they found he had one, and (2) in assessing the defendant's mental state, as it might bear on a finding of extreme atrocity or cruelty, the jury could consider whether the defendant's mental capacity was substantially reduced.

1. The judge gave no instruction concerning the defendant's possible lack of criminal responsibility, colloquially known as an "insanity defense." See *Commonwealth* v. *McHoul*, 352 Mass. 544 (1967). No such instruction was requested, and the defendant did not object, on this ground, to the charge as given, even though the issue of the lack of criminal responsibility was referred to in a bench conference in the course of the trial.

Trial counsel made a conscious choice not to assert the defendant's lack of criminal responsibility and only to argue, on the principles of the *Gould* case, that the defendant had a diminished capacity to appreciate what he was doing. In making his *Gould* argument, trial counsel stated that the defendant was not mentally ill. To dispose of one argument made to us, we conclude that this was a reasonable tactical choice considering that the defendant's own expert testified that the defendant was criminally responsible on May 29, 1979. To argue against his own witness on the issue of criminal responsibility could well have undercut his expert's credibility on the *Gould* issues. In the circumstances, we find no ineffective assistance of counsel in counsel's failure to argue lack of criminal responsibility.

There was, however, evidence that, if believed, would have warranted the jury in concluding that there was a reasonable doubt concerning the defendant's criminal responsibility. If it had been requested, a charge on criminal responsibility should have been given. Compare *Commonwealth* v. *Laliberty*, 373 Mass. 238, 246-247 (1977), *Blaisdell* v. *Commonwealth*, 372 Mass. 753, 765 (1977), and *Commonwealth* v. *Walker*, 370 Mass. 548, 581, cert. denied, 429 U.S. 943 (1976) (charge required), with *Com-*

monwealth v. *Mattson,* 377 Mass. 638, 644 (1979), and *Commonwealth* v. *McInerney,* 373 Mass. 136, 151-153 (1977) (no charge required). The jury were not bound by the expert testimony on this question. *Commonwealth* v. *Laliberty, supra* at 242; *Commonwealth* v. *Walker, supra* at 583. There was evidence that warranted the jury in finding that the defendant stabbed the victim, whom he testified he loved, ten times about her body; the defendant did not recall the stabbings; he mistakenly believed the victim threatened him with a gun; he had "snapped out"; and he was unable to understand the enormity and consequences of what he was doing. This is not a strong case on the defendant's lack of criminal responsibility, particularly in light of his own expert's testimony, but it would have been a jury question, if the defendant had requested a charge on lack of criminal responsibility.

We must decide whether there was a substantial likelihood of a miscarriage of justice requiring a new trial.[1] The Commonwealth argues that, because the jury found the defendant guilty of murder in the first degree, thus rejecting a reduced sentence in the face of *Gould* instructions, the defendant could not have been prejudiced by the omission of a charge on criminal responsibility. It is true that, if deliberate premeditation was the basis of the verdict, the jury did not find that any mental illness of the defendant barred a finding beyond a reasonable doubt of deliberate premeditation. It is also true, if extreme atrocity or cruelty was the basis of their verdict, the jury did not reject a finding of guilt on the ground of the defendant's mental illness or substantially reduced mental capacity. But these circumstances are not conclusive. The factual questions to be considered concerning a lack of criminal responsibility under the standards of *Commonwealth* v. *McHoul,* 352 Mass. 544, 546-548 (1967), are not identical to the factual

---

[1] The defendant does not change the issue by arguing that he was denied due process of law because the prosecution was relieved of its burden to prove criminal responsibility beyond a reasonable doubt.

questions presented concerning mental illness and a substantially reduced mental capacity under *Commonwealth v. Gould, supra.* It must be acknowledged, however, that there are substantial similarities in those factual issues.

Although, therefore, the jury's verdict was not conclusive on the matter of the defendant's criminal responsibility, it does support our conclusion that there was no substantial likelihood of a miscarriage of justice. If the jury were unwilling to return a verdict of guilty of second degree murder, in the light of *Gould* instructions, the likelihood that it would have accepted an "insanity defense" is slight.[2]

Trial counsel made a reasonable tactical choice not to press an "insanity" defense, and thus "the matter of [the defendant's] criminal responsibility was not fairly raised in this case." *Commonwealth* v. *Laliberty, supra* at 247. The only expert testimony indicated that the defendant was not suffering from a mental disease, and there was no reference to a mental defect. "From our assessment of this entire record, we conclude that substantial justice does not require a new trial at which the defendant's criminal responsibility at the time of the [killing] would be submitted to the jury." *Id.* at 248.

2. The defendant, for the first time on appeal, challenges the judge's instructions pursuant to *Commonwealth* v. *Gould*, 380 Mass. 672 (1980). The judge properly advised the jury that they were not obliged to believe the testimony of expert witnesses. He did not have to repeat that instruction when he gave his *Gould* charge.

---

[2] There is little doubt that the jury considered whether the defendant had a mental impairment which affected his capacity to commit murder in the first degree by reason of extreme atrocity or cruelty. The jury returned with two questions for the judge, one of which was: "What is the correct verdict if the murder was committed with extreme atrocity, but the defendant was suffering from some pressing mental condition (but not a mental illness)?" The judge explained again that a substantially reduced mental capacity could be weighed in evaluating extreme atrocity and stated that, if the jury did not find murder in the first degree, they should consider whether the defendant was guilty of murder in the second degree.

The defendant also challenges the *Gould* charge on deliberate premeditation on the ground that it confused the jury. The charge was substantively correct. The judge closely paraphrased analytical language in the *Gould* opinion (see 380 Mass. at 682-683) that the judge himself characterized as "extremely complicated language from a very recent case." The charge would not have suffered if the judge had omitted that language. He did use and paraphrase other portions of the *Gould* opinion. He might have simply followed the advice of the *Gould* opinion and given an instruction "in accordance with *Commonwealth* v. *Delle Chiaie*, 323 Mass. 615, 617-618 (1949)." *Commonwealth* v. *Gould*, 380 Mass. at 683.[3] However, we see no basis for relief under G. L. c. 278, § 33E, in these circumstances.

3. The defendant, also for the first time on appeal, argues that the judge should have given an instruction on automatism — that, if the defendant stabbed the victim while he was not conscious, he could not be responsible for his conduct because it was not a voluntary act. W.R. LaFave & A.W. Scott, Jr., Criminal Law § 44 (1972). See *People* v. *Grant*, 71 Ill. 2d 551, 558-559 (1978); *State* v. *Caddell*, 287 N.C. 266, 284-285 (1975). This "defense," to date not recognized as such in this Commonwealth (see *Commonwealth* v. *Sheehan*, 376 Mass. 765, 773-774 [1978]), differs from an "insanity defense" and from a claim of diminished capacity. The principle appears to have been applied particularly where a defendant was in an epileptic state, subject to organic brain disease, or affected by some other disorder. W.R. LaFave & A.W. Scott, Jr., *supra*. In many instances, but not all, a claim of lack of criminal responsibility would also appear to be equally applicable.

It is questionable whether the evidence on which the defendant relies required an automatism instruction, even if

---

[3] Of course, the charge must make clear that the burden is on the Commonwealth to prove premeditation beyond a reasonable doubt and that any evidence of mental illness should be considered in deciding whether the Commonwealth has met its burden.

we were to accept the principle. The fact that the defendant did not remember the stabbings may tend to show that, at the time of the stabbings, he was not conscious of what he was doing. His expert testified, however, that people like the defendant may selectively forget shameful, embarrassing, or painful events. He also testified that "[i]n my experience, this kind of thing [what the defendant did] is *almost* automatic and accomplished within a setting of *reduced awareness* of the actual consequences of such behavior" (emphasis supplied). The expert did not testify that the defendant was not conscious when he stabbed the victim.

We need not decide whether testimony of a failure to remember would alone require an automatism instruction nor need we decide those circumstances, if any, in which we would adopt the concept of an automatism defense. This issue was not raised below. We see no substantial likelihood of a miscarriage of justice in the failure of the judge, on his own motion, to give such an instruction. The jury's verdict, in the face of a *Gould* instruction, strongly indicates that they would have rejected this absolute defense because they rejected the defendant's diminished responsibility claim.

4. We see no reason to order a new trial or to reduce the verdict pursuant to G. L. c. 278, § 33E.

*Judgment affirmed.*