Carrie C. WONG, Petitioner–Appellant,

v.

Christine MONEY, Warden; Attorney General of the State of Ohio, Respondents–Appellees.

No. 96–4155.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 27, 1998.

Decided April 16, 1998.

F. Lee Bailey (argued), Kenneth J. Fishman (briefed), Bailey, Fishman & Leonard, Boston, MA, for Appellant.

Jonathan R. Fulkerson (argued), Jon C. Walden (briefed), Office of Atty. Gen. of Ohio, Columbus, OH, for Appellee.

Before: GUY, NELSON, and SUHRHEINRICH, Circuit Judges.

## OPINION

SUHRHEINRICH, Circuit Judge.

Petitioner Carrie C. Wong appeals from the district court's denial of her petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. We AFFIRM.

## I.

On October 25, 1991, police officers in Jackson County, Ohio, responded to a 911 call placed by Petitioner's daughter, Patty Wong, indicating that Petitioner was acting oddly and in need of assistance. Officer Terry Snyder of the Oak Hill Police Department arrived at Petitioner's house, knocked on the back door, and identified himself as a police officer. Officer Snyder then heard a shotgun blast which went through the bottom part of the door. He retreated to his cruiser and called for back-up. Officer Dave Ward, Chief of the Oak Hill Police Department, arrived next at the scene. He and Officer Snyder heard another shot, which actually hit Ward's cruiser. At some point, either before or after this second shot, Patty came outside, explained that the dog had knocked over the gun, and then went back into the house.

Dr. Henry Wong arrived next. As he approached the back door, a third shot came through the door. This shot did not hit anyone; however, glass flew from the door and landed on Dr. Wong's feet. Dr. Wong attempted to run to another door, but officers handcuffed him and placed him in a cruiser.

Additional police officers arrived and completely surrounded the Wong house. Thereafter, two officers approached the house in an attempt to subdue the Petitioner. After initially speaking with one of the officers, Petitioner fired the shotgun again. Two officers were injured, including Officer Snyder who was struck in the face and lost an eye.

Petitioner then came out of the house, still armed with the shotgun, and began pacing back and forth in front of the garage. Petitioner fired the shotgun through an awning and subsequently reloaded the gun. After she fired the gun again, police officers were able to detain her as she attempted to reload.

In November 1991, the Jackson County Grand Jury returned an eight count indictment against Petitioner. Counts one through five charged Petitioner with felonious assault against a police officer, and count six charged her with felonious assault against her husband. All of these counts contained a firearm specification. Counts seven and eight charged Petitioner with felony vandalism for the damage done to police cruisers. These counts contained a firearm specification as well.

Given Petitioner's behavior and the observations of the police officers, defense counsel entered pleas of not guilty and not guilty by reason of insanity. In Ohio, a defendant is not guilty by reason of insanity with respect to the commission of an offense "only if he proves ... that at the time of the commission of the offense, he did not know, [1] as a result of a severe mental disease or defect, [2] the wrongfulness of his conduct." Ohio Rev.Code Ann. § 2901.01(N) (Anderson 1996). Prior to trial, Petitioner was examined by Dr. Newton Jackson, who was retained by defense counsel, and Dr. Donna Winter, who was appointed by the trial court. Both doctors determined that Petitioner met only one of the two requirements under Ohio law for a finding of insanity. However, the doctors disagreed as to which requirement Petitioner had satisfied. As a result of these conclusions, defense counsel did not present an insanity defense at trial.

Defense counsel did ask the court to allow the two psychologists to testify to establish the defense of diminished capacity. Counsel argued that Petitioner had a mental disease which, combined with alcohol and drug ingestion and other stressors, made her unable to possess the necessary *mens rea* for the crimes with which she was charged. The trial court concluded that Ohio law did not permit the defense of diminished capacity and that a defendant may not offer psychiatric testimony unrelated to the insanity defense to show that, due to mental illness, intoxication, or other reason, she lacked the mental capacity to form the *mens rea* element of the crime charged.

However, Petitioner and the State did enter into a stipulation, which stated: "If Dr. Jackson and Dr. Winter were called to testify in this case and if on October 25, 1991 the Defendant voluntarily ingested a large quantity of Fiorinal, it would be their opinion that

she was in a state of voluntary intoxication."[1] Defense counsel introduced limited evidence relating to Petitioner's voluntary intoxication and to her bizarre behavior during and immediately prior to the incident. Counsel attempted to show that Petitioner was distraught over the fact that her husband had blamed her for her recent miscarriage, that Petitioner had consumed large quantities of prescription pain killers and alcohol, and that Petitioner was actually under the belief that her husband and the police were conspiring to kill her. The trial court warned defense counsel early in the proceedings that it harbored substantial reservations about counsel's ability to demonstrate serious provocation based upon the facts of the case. The court later indicated that it would not give an aggravated assault instruction based on the facts in the case, but that it might be willing to instruct the jury that voluntary intoxication, while not a defense to a crime, nevertheless can negate the element of knowledge and require a finding of not guilty. Upon Petitioner's request, the trial court instructed the jury on the voluntary intoxication defense. The jury returned guilty verdicts on all counts, and Petitioner received a prison sentence totaling fifteen to forty years.

Represented by new counsel, Petitioner appealed to the Ohio Court of Appeals for the Fourth Appellate District and raised the following assignments of error:

1. The defendant was denied her right to the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution as well as Article I Section 10 of the Ohio Constitution when trial counsel failed to present the testimony of Dr.s (sic) Jackson and Winter to the jury and request a jury instruction on the defense of not guilty by reason of insanity.

2. The trial court erred to the prejudice of the defendant by refusing to instruct the jury on the lesser included offenses of aggravated assault and assault on count six (the felonious assault charge against Dr. Henry Wong) and by refusing to charge assault and negligent assault as lesser in-cluded offenses with regard to counts one through five.

3. The trial court committed plain error when it charged the jury on two (2) counts of felony vandalism and (A) failed to identify or relate either count to any evidence adduced at trial, and (B) charged the jury on a firearm specification related to each vandalism count.

4. The trial court erred to the prejudice of the defendant by refusing to allow expert testimony that the defendant's underlying psychological condition in combination with several other stressors diminished her capacity to form the requisite mental state necessary for conviction of the crime of felonious assault, *State v. Wilcox* (1982), 70 Ohio St.2d 182, 436 N.E.2d 523 to the contrary notwithstanding.

5. The defendant's conviction and sentence violate her right not to be subjected to cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution as well as Article I Section 9 of the Ohio Constitution where the uncontradicted evidence is that the offense behavior is the direct and proximate result of her mental disease or defect as opposed to her free will, O.R.C. §§ 2901.01(N) and 2945.371 to the contrary notwithstanding.

In her reply brief, Petitioner submitted two additional assignments of error:

6. The State failed to rebut Defendant's argument that she was denied effective assistance of counsel or to address, in the alternative, whether the trial court erroneously excluded expert testimony.

7. The *Wilcox* rule is unconstitutional as applied or, at a minimum, is inapplicable to this case.

On May 14, 1994, the state court of appeals affirmed, with one judge concurring only in the judgment. On September 22, 1994, the court of appeals denied Petitioner's motion for reconsideration.

---

**1.** Medical records indicate that, on October 25, 1991, Petitioner told her treating physicians that she had taken about forty fiorinal tablets that day before the shooting incident.

On June 24, 1994, Petitioner sought leave to appeal to the Supreme Court of Ohio, raising the following propositions of law:

1. A defendant is denied the effective assistance of counsel, in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I Section 10, of the Ohio Constitution, where trial counsel fails to present available expert testimony supporting the only viable defense, not guilty by reason of insanity, and fails to request an instruction on said defense. Counsel's ineffectiveness is compounded where counsel fails to either withdraw a defense that is abandoned or otherwise respond to a prosecutor's opening statement announcing a defense which defense counsel never offers or argues to the jury.

2. A reviewing court may not rely on facts extraneous to the record to reach its decision, particularly where said court is speculating as to the nature and import of said facts.

3. The failure of a trial court to instruct a jury on lesser included offenses of aggravated assault and negligent assault where there is an evidentiary basis for such instructions violates the rights of due process and effective assistance of counsel, guaranteed under the Sixth and Fourteenth Amendments to the United States Constitution and Article I Sections 10 and 16 of the Ohio Constitution.

4. *State v. Wilcox* should be overruled because it violates due process and denies compulsory process and in any event should not be applied to a case where the expert psychological testimony is offered to establish provocation.

On September 28, 1994, the Ohio Supreme Court dismissed Petitioner's appeal on the ground that it presented no substantial constitutional questions.

On May 15, 1995, Petitioner filed a petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody. In her petition, she alleged two grounds for relief:

I. *Denial of effective assistance of trial counsel.*

Supporting Facts: Petitioner's trial counsel gave notice of intent to raise the defense of not guilty by reason of insanity. A defense retained psychologist found Petitioner met the second prong of the Ohio insanity defense, i.e., that she was so impaired that she lacked the capacity to know the wrongfulness of her conduct. The defense psychologist was less clear as to the first prong (i.e. whether she suffered from a severe mental disease or defect), having testified to a bail hearing that Petitioner was psychotic and suffering a paranoid delusional disorder but ultimately finding that her conduct was a result of Severe Borderline Personality Disorder and other factors. The court appointed psychologist opined that petitioner suffered from a mental disease but acted knowingly on the day of the offense. Despite the availability of this expert testimony at least partially supportive of an insanity defense, and the existence of substantial lay testimony and hospital records supporting a NGRI defense, defense counsel neither presented an insanity defense at trial nor sought further expert testimony to rectify, explain or enhance the expert opinions already available. Nor did trial counsel withdraw the notice of intent to present an NGRI defense but rather permitted the prosecutor's opening statement (essentially claiming that the defense would not be able to successfully prove its insanity defense) to go unanswered and be made without objection Trial counsel's ineffective assistance was compounded by his failure to investigate or present any meaningful evidence, or to cogently present argument, in support of the partial defense of voluntary intoxication. Petitioner was thus tried without a defense being offered.

II. *Conviction obtained in violation of rights to a defense and due process.*

Supporting facts: The trial judge, citing Ohio Supreme Court decisions, ruled that psychiatric and psychological expert testimony was inadmissible unless it related to the NGRI defense. This ruling contributed to trial counsel's erroneous decision to present no defense at all.

The district court denied the petition for habeas corpus relief, finding no merit to Petitioner's claims.

## II.

On appeal, we consider: (1) whether trial counsel's representation constituted the ineffective assistance of counsel in violation of the Sixth Amendment; and (2) whether the application of Ohio's *Wilcox* rule violated Petitioner's constitutional rights to compulsory due process under the Sixth and Fourteenth Amendments. We address each claim in turn.

■■■ A defendant asserting an ineffective assistance of counsel claim generally must show not only that defense counsel's performance was deficient but also that this deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). With respect to the first requirement, the defendant must demonstrate "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* With respect to the second, the defendant must show that the deficient performance prejudiced the defense and deprived the defendant of a fair trial, a trial whose result is reliable. *Id.* To show prejudice, the defendant must demonstrate that there exists a reasonable probability that, absent counsel's unprofessional errors, the results of the proceeding would have been different. *Id.* at 694, 104 S.Ct. at 2068.

■■■ A reviewing court must remember that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690, 104 S.Ct. at 2066. The *Strickland* Court cautioned that scrutiny of defense counsel's performance must be "highly deferential." *Id.* at 689, 104 S.Ct. at 2065. The Court explained that

> [i]t is all too tempting for a defendant to secondguess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to

conclude that a particular act or omission of counsel was unreasonable.... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance....

*Id.* The Court further noted that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable...." *Id.* at 690, 104 S.Ct. at 2066. With these background principles in mind, we consider the merits of Petitioner's claims.

■■■ First, Petitioner argues that defense counsel's representation was deficient by virtue of his failure to present the insanity defense or, at a minimum, to fully investigate same. Petitioner contends that counsel failed to present this defense despite significant evidence indicating its probable success. In support of her position, Petitioner points to the district court's statement that "[i]n the instant case, the record is replete with testimony from law enforcement officers, Petitioner's husband, Petitioner's daughter, and hospital personnel regarding the defendant's state of mind prior to, during, and immediately after the incident." Petitioner maintains: "It was precisely the above-described evidence, supportive of an insanity defense, that should have compelled trial counsel to pursue, present and argue that defense."

With respect to the experts in this case (Drs. Jackson and Winter), Petitioner essentially argues that: (1) each doctor could have testified as to a single prong of Ohio's insanity law; or (2) each doctor could have testified as to both prongs of the law. Petitioner contends that her defense counsel misinterpreted Ohio case law in failing to realize that he could have called both experts to testify. Petitioner maintains that "Dr. Jackson's testimony was relevant to and supportive of both prongs of R.C. § 2901.01(N). Dr. Winter's testimony would have been consistent

with Dr. Jackson's on the first prong and easily rebutted on the second prong." Petitioner's argument is unpersuasive.

Neither Dr. Jackson nor Dr. Winter concluded that Petitioner was insane under Ohio law. The record indicates that Dr. Jackson determined that Petitioner was unable to appreciate the wrongfulness of her conduct but nevertheless did not suffer from a severe mental disease or defect; Dr. Winter, on the other hand, concluded that Petitioner suffered from a severe mental disease or defect but nonetheless could appreciate the wrongfulness of her conduct. Defense counsel stated in a colloquy with the prosecution and the trial judge that Dr. Winter had described Petitioner's behavior as "goal directed purposeful and pro-active." Moreover, the record contains the proffered testimony of Dr. Jackson regarding his evaluation of Petitioner:

> Q [from defense counsel]: Just so that the record is clear, do you have an opinion to a reasonable degree of psychological certainty as to whether or not Carrie Wong was legally insane as insane was defined in Ohio?
>
> A:[by Dr. Jackson]: Yes.
>
> Q: And, what is that opinion?
>
> A: I believe she was not able to meet the criteria, according to Ohio law, to be considered legally insane.

We find that counsel's decision to forego an insanity defense did not constitute ineffective assistance of counsel under the circumstances present here. Defense counsel's decision was reasonably based upon the fact that neither Dr. Jackson, the defense-retained expert, nor Dr. Winter, the court-appointed expert, concluded that Petitioner was insane under Ohio law. *See Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066 ("strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually challengeable...."). In *Lewis v. Alexander,* 11 F.3d 1349, 1353 (6th Cir. 1993), we explained that "[a]n attorney is entitled to rely on a professional of established skill and reputation in formulating judgments necessary to trial preparation." This statement is equally applicable here. Given the doctors' conclusions, the prosecution presumably would have filed a motion in limine to exclude the doctors' testimony on the ground that it was not relevant, since neither doctor independently determined that Petitioner was legally insane under Ohio law. Petitioner contends, however, that her defense counsel could have presented Dr. Winter's testimony to show that Petitioner suffered from a severe mental disease or defect and Dr. Jackson's testimony to show that Petitioner was unable to appreciate the wrongfulness of her actions. Petitioner maintains that, taken together, the opinions of Drs. Winter and Jackson would have established that Petitioner was insane. We disagree. In our view, it is highly doubtful that the trial court would have permitted defense counsel to proceed in such a piecemeal fashion.[2]

In any event, it makes no difference to our decision in this case. Even assuming that each doctor testified on direct examination as to the prong of the Ohio law that he or she believed Petitioner satisfied, the prosecution simply could have asked each doctor on cross examination whether Petitioner was insane under the Ohio standard, and each would have replied in the negative. At closing argument, the prosecution could have emphasized that even Petitioner's own witnesses did not believe she was insane. In our view, defense counsel could have rationally concluded that such a scenario would have weakened his own credibility and that of his client and lessened his ability to argue effectively on other issues.

There is an additional reason as well. At trial, the prosecution attempted to admit into evidence a letter allegedly written by Petitioner shortly before the shooting took place. The contents of the letter are not in the record. However, contrary to Petitioner's current argument on appeal, the letter presumably was damaging to Petitioner, as her trial counsel fought successfully to keep the note from being admitted into evidence.

---

**2.** The state court of appeals assumed for purposes of its decision that the testimony of both doctors would have been admissible.

Doctors Jackson and Winter had relied on this note in reaching their respective conclusions about Petitioner's psychological condition on the day of the incident. As the Ohio court of appeals noted, if defense counsel had called the doctors to testify, counsel, "in essence," would have admitted that Petitioner wrote the letter and "opened the door" for the prosecution on cross examination to inquire as to its contents and, possibly, its admission.

Petitioner's reliance on the First Circuit's decision in *Genius v. Pepe,* 50 F.3d 60 (1st Cir.1995), is misplaced. In *Pepe,* the First Circuit found ineffective assistance of counsel and reversed a conviction on habeas review, because trial counsel had failed to present an insanity defense. The court explained: "Where insanity would have been a complete defense, it was inexcusable not to pursue it. Unless, of course, there was a reason." *Id.* at 61. On direct appeal, the Supreme Judicial Court of Massachusetts had rejected the defendant's argument. The Supreme Judicial Court had concluded that the defense counsel's decision was a tactical one. The defendant presented a diminished capacity defense, and the expert witness, who testified in support of the defendant on this issue, also testified that the defendant was criminally responsible. *Massachusetts v. Genius,* 387 Mass. 695, 442 N.E.2d 1157, 1158 (1982). The First Circuit rejected the Supreme Judicial Court's determination that " '[t]o argue against his own witness on the issue of criminal responsibility would well have undercut his expert's credibility on the [diminished capacity] issues.' " *Pepe,* 50 F.3d at 61 (quoting *Genius,* 442 N.E.2d at 1158). The First Circuit concluded: "To forego even exploring a possible complete defense because offering it might weaken a partial one . . . seems an extraordinarily unbalanced choice." *Id.* In the instant case, in contrast, defense counsel clearly explored the possibility of an insanity defense. Indeed, he rejected it only

after both his retained expert as well as the court-appointed expert independently concluded that Petitioner was not insane under Ohio law. *Pepe* requires that there be a reason for defense counsel to forego an insanity defense; here, there were several. In addition, we note that defense counsel presented a defense of voluntary intoxication, which had the potential to produce a not guilty verdict.

■ Petitioner's argument is a classic case of second guessing, an argument which cannot succeed under the *Strickland* test and its deferential review of attorney performance. Prior courts have found, and we agree, that counsel's decision to forego an insanity defense was clearly a reasonable one. Of course, this is not to suggest that the alternative strategy put forth by Petitioner on appeal would have been unsuccessful. However, under *Strickland,* it is not our province to dictate to defense counsel the appropriate strategy to pursue in a particular case. As the Supreme Court explained in *United States v. Cronic,* 466 U.S. 648, 665 n. 38, 104 S.Ct. 2039, 2050 n. 38, 80 L.Ed.2d 657 (1984): "We address not what is prudent or appropriate, but only what is constitutionally compelled." Our conclusion in this case is buttressed by the extended colloquy in the record between the trial court, the prosecution, and defense counsel, discussing the possibility of an insanity defense, the opinions of the expert witnesses, the presentation of a voluntary intoxication defense, and the rules under Ohio law regarding the presentation of expert witnesses. This colloquy convinces us that defense counsel's decision was indeed sound.[3]

■ Alternatively, Petitioner argues that defense counsel was ineffective for neglecting to pursue additional investigation to determine whether a third expert might have concluded that Petitioner was legally insane

3. We note that, under these circumstances, it is difficult to discern any prejudice resulting from counsel's performance. *See Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984). We also reject Petitioner's arguments that her counsel's representation was ineffective due to his failure to waive his notice of an intent to present an insanity defense

and his failure to object to a remark by the prosecution in its opening statement contesting Petitioner's alleged insanity. We find it difficult to understand how these occurrences prejudiced Petitioner, since, at most, they caused the jury to reject a defense which Petitioner did not even present.

**322**

or that Dr. Jackson's findings were, in fact, supportive of an insanity defense. At the outset, Respondent contends that Petitioner has procedurally defaulted this claim, because she failed to assert it in the state courts. Under Ohio law, the failure to raise on appeal a claim that appears on the face of the record constitutes a procedural default under the State's doctrine of res judicata. *Ohio v. Cole,* 2 Ohio St.3d 112, 443 N.E.2d 169, 171 (1982); *Ohio v. Perry,* 10 Ohio St.2d 175, 226 N.E.2d 104, 105 (1967). If a procedural bar applies, Petitioner must show cause and prejudice for her failure to present the claim in state court. *Teague v. Lane,* 489 U.S. 288, 298–99, 109 S.Ct. 1060, 1068–69, 103 L.Ed.2d 334 (1989); *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645–46, 91 L.Ed.2d 397 (1986). Although Petitioner acknowledges that her claim was not "expressly presented" in the state courts, she contends that it "is not a separate ground but rather is merely an example of the obvious step that trial counsel could have taken to avoid the disaster that occurred at trial." We disagree. This circuit has held that the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court. *See Pillette v. Foltz,* 824 F.2d 494, 497 (6th Cir.1987); *Prather v. Rees,* 822 F.2d 1418, 1421 (6th Cir.1987). In our view, Petitioner's second ineffective assistance claim rests on a theory which is separate and distinct from the one previously considered and rejected in state court. Petitioner does not even argue that she can show cause and prejudice, and we find that she has procedurally defaulted this claim.

■ Petitioner's claim fails on its merits as well. The argument "does not involve a failure to investigate, but, rather, petitioner's dissatisfaction with the degree of ... [her] attorney's investigation into a particular defense." *Lewis,* 11 F.3d at 1353. In *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066–67, the Supreme Court explained that "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." In the present case, both the court-appointed expert as well as the expert retained by the defense had concluded that Petitioner was not insane under Ohio law. We hold that defense counsel satisfied his duty under *Strickland* to make "reasonable investigations," *id.,* and was entitled to rely on the independent conclusions of the two experts in formulating his trial strategy, *Lewis,* 11 F.3d at 1353.

■ Finally, Petitioner contends that defense counsel was ineffective due to his failure to investigate and present expert testimony regarding her voluntary intoxication defense. In Petitioner's view, counsel failed to present this defense in a "meaningful way." Initially, we hold that this claim has been procedurally defaulted, as Petitioner failed to raise it in the state courts. *Cole,* 443 N.E.2d at 171. In the state courts, Petitioner focused solely on defense counsel's failure to present an insanity defense. Indeed, Petitioner argued in the state court of appeals that voluntary intoxication "did not explain ... [her] behavior and was not particularly consistent with the facts."

■ In any event, the trial court in this case ruled that state law precluded the use of expert testimony to show that, due to intoxication, Petitioner lacked the mental capacity to form the specific mental state required for a particular crime. This was a correct interpretation of Ohio law. *See Ohio v. Cooey,* 46 Ohio St.3d 20, 544 N.E.2d 895, 906 (1989). At trial, defense counsel introduced testimony from several witnesses regarding Petitioner's consumption of alcohol and an excess of prescription pain killers. Counsel also secured from the prosecution the following stipulation: "If Dr. Jackson and Dr. Winter were called to testify in this case and if on October 25, 1991 the Defendant voluntarily ingested a large quantity of Fiorinal, it would be their opinion that she was in a state of voluntary intoxication." Following trial, the court instructed the jury at the request of defense counsel that voluntary intoxication, while not a defense to a crime, nonetheless can negate the element of knowledge and require a verdict of not guilty. In sum, we find that defense counsel's representation in presenting the defense of voluntary intoxication was not constitutionally deficient.

## III.

■ Ohio does not recognize the defense of diminished capacity, and a defendant may not offer expert psychiatric testimony, unrelated to the presentation of an insanity defense, to show that she lacked the mental capacity to form the specific mental state required for a particular crime or degree of crime. *Ohio v. Wilcox*, 70 Ohio St.2d 182, 436 N.E.2d 523, 533 (1982). In *Wilcox*, the Ohio Supreme Court stated that "the diminished capacity theory forcefully challenges conventional concepts of culpability and 'involve(s) a fundamental change in the common law theory of responsibility.'" *Id.* (quoting *Fisher v. United States*, 328 U.S. 463, 476, 66 S.Ct. 1318, 1324–25, 90 L.Ed. 1382 (1946)). The court undertook a comprehensive review of the diminished capacity defense, including the history of the defense and the purposes it was designed to serve. *See id.* 436 N.E.2d at 525–30. The court stated:

> "While some courts may have blind faith in all phases of psychiatry, this court does not. There is substantial doubt whether evidence such as was sought to be introduced here is scientifically sound, and there is substantial legal doubt that it is probative on the point for which it was asserted."

*Id.* at 529 (quoting *Steele v. Wisconsin*, 97 Wis.2d 72, 294 N.W.2d 2, 13 (1979)); *see also Cooey*, 544 N.E.2d at 906 ("The *Wilcox* rule is based on a mistrust of the ability of psychiatry to accurately 'fine tune' degrees of capacity among offenders who are sane—*i.e.*, who have the minimal capacity to act voluntarily."). The state supreme court also noted:

> In light of the linedrawing difficulties courts and juries face when assessing expert evidence to make the "bright line" insanity determination, we are not at all confident that similar evidence will enable

juries, or the judges who must instruct them, to bring the blurred lines of diminished capacity into proper focus so as to facilitate principled and consistent decision-making in criminal cases. In short, the fact that psychiatric evidence is admissible to prove or disprove insanity does not necessarily dictate the conclusion that it is admissible for purposes unrelated to the insanity defense.

*Wilcox*, 436 N.E.2d at 530.[4]

On appeal, Petitioner posits two arguments: (1) that the exclusion of psychiatric testimony, unrelated to the insanity defense, to show the absence of the requisite mental capacity to form the specific *mens rea* for a particular crime, or to show a state of mind susceptible to provocation, violates a defendant's right to compulsory process and due process under the Sixth and Fourteenth Amendments; and (2) the wholesale exclusion of expert testimony on an issue that directly impacts the *mens rea* element of an offense (i.e. diminished capacity) is violative of due process as an arbitrary rule that excludes evidence which is material and relevant. Petitioner contends that

> expert medical testimony should have been received both to negate the mens rea element of felonious assault, and to support an argument in favor of the lesser included offenses. In particular, such evidence would have gone directly to the issue of whether Petitioner was sufficiently provoked [as] to be guilty of only the lesser included offense of aggravated assault.

Petitioner essentially asks us to impose, as a matter of federal constitutional law, an obligation upon the State of Ohio to recognize the defense of diminished capacity. This we are unwilling to do.

In *Muench v. Israel*, 715 F.2d 1124, 1144–45 (7th Cir.1983), the Court of Appeals for the Seventh Circuit concluded that "a state is

4. The Court of Appeals for the Third Circuit has stated:

> Commentators have agreed ... that only in the most extraordinary circumstances could a defendant actually lack the capacity to form mens rea as it is normally understood in American law.... Even the most psychiatrically ill have the capacity to form intentions, and the existence of intent usually satisfies any mens

> rea requirement. Commentators have therefore argued that permitting evidence and arguments about a defendant's capacity to form mens rea distracts and confuses the jury from focusing on the actual presence or absence of mens rea.

*United States v. Pohlot*, 827 F.2d 889, 903–04 (3d Cir.1987).

not constitutionally compelled to recognize the doctrine of diminished capacity and hence a state may exclude expert testimony offered for the purpose of establishing that a criminal defendant lacked the capacity to form a specific intent." As the basis for its constitutional holding, the *Muench* court relied primarily upon three Supreme Court cases involving the question of whether a criminal defendant has a constitutional right to present evidence of psychological abnormalities (that fall short of legal insanity) in order to establish lack of capacity to form an intent to kill.

In *Coleman v. California*, 317 U.S. 596, 63 S.Ct. 162, 87 L.Ed. 487 (1942)(per curiam), and *Troche v. California*, 280 U.S. 524, 50 S.Ct. 87, 74 L.Ed. 592 (1929)(per curiam), the defendants had been convicted of first-degree murder in California state court after their requests to introduce evidence of mental abnormalities in the guilt phase of their bifurcated trials had been denied. The Supreme Court dismissed the appeals for want of a substantial federal question. *Muench* explained that these are decisions on the merits and constitute binding precedent unless and until subsequent Supreme Court decisions indicate otherwise. *Muench*, 715 F.2d at 1139 (citing *Hicks v. Miranda*, 422 U.S. 332, 343–45, 95 S.Ct. 2281, 2288–90, 45 L.Ed.2d 223 (1975)).[5] In *Fisher v. United States*, 328 U.S. 463, 66 S.Ct. 1318, 90 L.Ed. 1382 (1946), the defendant had been convicted of first degree murder in the District of Columbia, and he contended that the trial court erred in its refusal to instruct the jury to consider the defendant's abnormal personality in determining the issue of intent. The Supreme Court, which possesses supervisory powers over the District's courts, rejected the claim, stating:

It may be that psychiatry has now reached a position of certainty in its diagnosis and prognosis which will induce Congress to enact the rule of responsibility for crime for which petitioner contends. For this Court to force the District of Columbia to adopt such a requirement for criminal trials would involve a fundamental change in the common law theory of responsibility.

*Fisher*, 328 U.S. at 476, 66 S.Ct. at 1324–25.[6]

 Following its review of this trilogy, the Seventh Circuit explained:

In our view, *Troche, Coleman,* and *Fisher* are dispositive of the question presented in the instant case. *Troche* and *Coleman* deemed petitioners' due process arguments as insubstantial, and *Fisher* carefully considered the same arguments and did not even find them sufficiently compelling to justify an exercise of the Court's supervisory authority over the District of Columbia courts. A theory that the Supreme Court has twice refused to impose upon the state of California, albeit in summary decisions, and has refused to impose upon the District of Columbia courts under its supervisory powers, is not one that this lower federal court will impose on the state of Wisconsin as a matter of federal constitutional due process.

*Muench*, 715 F.2d at 1141; *see also Haas v. Abrahamson*, 910 F.2d 384 (7th Cir.1990)(reaffirming *Muench*). We agree. Accordingly, we hold that the Constitution does not require Ohio to recognize the defense of diminished capacity.

 The Compulsory Process Clause grants a criminal defendant the right to call witnesses that are "material and favorable to his defense." *United States v. Valenzuela–Bernal*, 458 U.S. 858, 867, 102 S.Ct. 3440,

---

5. In *Hicks*, the Court stated that " '[v]otes to ... dismiss for want of substantial federal question, it hardly needs comment, are votes on the merits of a case.' " *Hicks*, 422 U.S. at 344, 95 S.Ct. at 2289 (quoting *Ohio ex rel Eaton v. Price*, 360 U.S. 246, 247, 79 S.Ct. 978, 978–79, 3 L.Ed.2d 1200 (1959)). The Court noted that " 'unless and until the Supreme Court should instruct otherwise, inferior federal courts had best adhere to the view that if the Court has branded a question as unsubstantial, it remains so except when doctrinal developments indicate otherwise....' " *Id.* (quoting *Port Auth. Bondholders Protective*

*Comm. v. Port of New York Auth.*, 387 F.2d 259, 263 n. 3 (1967)).

6. With respect to *Fisher*, the Seventh Circuit explained: "We take *Fisher* at its word: it condoned, though did not endorse as the wiser position, the view that mental abnormality short of legal insanity is not a relevant factor in determining whether an accused is guilty of murder in the first or second degree...." *Muench*, 715 F.2d at 1142.

3446, 73 L.Ed.2d 1193 (1982). However, "[a] defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions." *United States v. Scheffer*, —— U.S. ——, ——–——, 118 S.Ct. 1261, 1263–64, 140 L.Ed.2d 413 (1998)(holding that a Military Rule of Evidence, which makes polygraph evidence inadmissible in court-martial proceedings, does not unconstitutionally abridge the right of the accused to present a defense). Indeed, as the Supreme Court has explained: "In the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973); *see also Scheffer*, —— U.S. at ——–——, 118 S.Ct. at 1263–64 (reaffirming that "state and federal lawmakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials.").

In *Scheffer*, the Court explained that evidentiary rules do not abridge the right of an accused to present a defense "so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *Scheffer*, —— U.S. at ——, 118 S.Ct. at 1264 (quoting *Rock v. Arkansas*, 483 U.S. 44, 56, 107 S.Ct. 2704, 2711–12, 97 L.Ed.2d 37 (1987)). In addition, the Court pointed out that it has "found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused." *Id.* (citing *Rock*, 483 U.S. at 58, 107 S.Ct. at 2712–13; *Chambers*, 410 U.S. at 302, 93 S.Ct. at 1049; *Washington v. Texas*, 388 U.S. 14, 22–23, 87 S.Ct. 1920, 1924–25, 18 L.Ed.2d 1019 (1967)).

The application of the *Wilcox* rule has not "significantly undermined fundamental elements of the accused's defense." *Id.* at ——–——, 118 S.Ct. at 1267–68. First, *Wilcox* did not preclude Petitioner from introducing any factual evidence; i.e. "'facts' about the alleged crime at hand." *See id.* at ——–—— & n. 13, 118 S.Ct. at 1268–69 & n. 13. Rather, *Wilcox* precluded Petitioner from offering psychiatric testimony, unrelated to an insanity defense, to show that she lacked the necessary mental capacity to form the specific mental state required for the crime of felonious assault. *See Wilcox*, 436 N.E.2d at 533. Second, the *Wilcox* rule did not prohibit Petitioner from testifying in her own behalf; presumably, Petitioner freely chose not to do so in this case. *See Scheffer*, —— U.S. at ——–——, 118 S.Ct. at 1268–69. Hence, we find that the requirements outlined in *Scheffer* are satisfied.

In *Rock*, in contrast, the defendant, who was accused of a killing to which she was the only eyewitness, was allegedly able to remember the facts of the killing only after having her memory hypnotically refreshed. *Rock*, 483 U.S. at 46, 107 S.Ct. at 2706. Because Arkansas law excluded all hypnotically refreshed testimony, the defendant was not permitted to testify regarding certain relevant facts, including whether the killing had been accidental. *Id.* at 47–49, 107 S.Ct. at 2706–08. In *Scheffer*, the Court explained with respect to *Rock*:

> In holding that the exclusion of this evidence violated the defendant's "right to present a defense," we noted [in *Rock* ] that the rule deprived the jury of the testimony of the only witness who was at the scene and had firsthand knowledge of the facts.... Moreover, the rule infringed upon the accused's interest in testifying in her own defense—an interest that we deemed particularly significant, as it is the defendant who is the target of any criminal prosecution.... For this reason, we stated that an accused ought to be allowed "to present his own version of events in his own words."

*Scheffer*, —— U.S. at ——, 118 S.Ct. at 1268 (internal citations omitted).

Similarly, in *Washington*, the statutes at issue prevented co-defendants or co-participants in a crime from testifying for one another and thus prevented the accused from offering his accomplice's testimony that the accomplice actually had committed the crime. *Washington*, 388 U.S. at 16–17, 87 S.Ct. at 1921–22. The Court determined that the Sixth Amendment was violated, because "'the State arbitrarily denied [the accused] the right to put on the stand a witness who was physically and mentally capable of testi-

fying to events that he had personally observed.'" *Scheffer*, —— U.S. at ——, 118 S.Ct. at 1268 (quoting *Washington*, 388 U.S. at 23, 87 S.Ct. at 1925). In addition, the Court noted that Texas could advance no legitimate interests in support of the evidentiary rules at issue, and that the rules burdened only the defense.[7] *Washington*, 388 U.S. at 22–23, 87 S.Ct. at 1924–25.

In *Wilcox*, the Ohio Supreme Court explained that the potential impact of a concept such as diminished capacity precluded its adoption "'by an expedient modification of the rules of evidence.'" *Wilcox*, 436 N.E.2d at 533 (quoting *Bethea v. United States*, 365 A.2d 64, 92 (D.C.Ct.App.1976)). The court concluded that if the doctrine of diminished capacity is "'to be incorporated into our law of criminal responsibility, the change should lie within the province of the legislature.'" *Id.* (quoting *Bethea*, 365 A.2d at 92). We agree. Since the evidence Petitioner seeks to introduce is inadmissible under Ohio law, and since Ohio is not constitutionally required to admit this evidence, Petitioner's claim must fail. *See Campbell v. Wainwright*, 738 F.2d 1573, 1580–81 (11th Cir.1984)(differing "slightly" from the analysis in *Muench* yet upholding the trial court's refusal to admit psychiatric evidence intended to disprove the element of premeditation with respect to a first-degree murder charge); *Wahrlich v. Arizona*, 479 F.2d 1137, 1138 (9th Cir.1973)(per curiam)(rejecting the defendant's due process and equal protection challenges to the trial court's refusal to admit psychiatric evidence for the purpose of negating the element of specific intent).

## IV.

For the foregoing reasons, we **AFFIRM** the judgment of the district court denying the petition for a writ of habeas corpus.

---

**7.** We recognize that the *Wilcox* rule, by definition, applies only to *defendants* who attempt to introduce expert testimony to show that they lack the mental capacity necessary to form the specific mental state required for a particular crime. However, we do not find this dispositive.