Jesse COWANS, Petitioner,

v.

Margaret BAGLEY, Warden,
Respondent.

No. C–1–00–618.

United States District Court,
S.D. Ohio,
Eastern Division.

Sept. 30, 2002.

Carol Ann Wright, Harry R. Reinhart, Reinhart Law Office–1, Columbus, OH, for Petitioner.

Daniel R. Ranke, Ohio Attorney General, Corrections Litigation Section, Michael L. Collyer, Assistant Attorney General, Capital Crimes Section, Cleveland, OH, Stuart Alan Cole, Ohio Attorney General, Corrections Litigation Section, Columbus, OH, for Respondent.

## *OPINION AND ORDER*

SARGUS, District Judge.

Petitioner, a prisoner sentenced to death by the State of Ohio, has pending before this Court a habeas corpus action pursuant to 28 U.S.C. § 2254. This matter is before the Court upon respondent's motion to dismiss procedurally defaulted claims, petitioner's memorandum in opposition, and respondent's reply. Also before the Court are the habeas corpus petition and the state court record, petitioner's motion for document discovery, respondent's memorandum in opposition to petitioner's motion, and petitioner's reply to respondent's memorandum in opposition.

### I. Factual History

The details of this capital murder and aggravated robbery are set forth in numerous state court opinions, including the Ohio Supreme Court's published opinion in *State v. Cowans*, 87 Ohio St.3d 68, 717 N.E.2d 298 (1999):

> Jessie J. Cowans, appellant, was convicted of the aggravated murder of Clara Swart and sentenced to death.
>
> Mrs. Swart, a sixty-nine-year-old widow, lived alone in a rural section of Clermont County. One day in July 1996, when her son, Timothy, was taking some items to the side of the road to be picked up as trash, Cowans drove up and asked if he could take a glider-type swing that Timothy had placed by the road. Timothy agreed and helped him load the swing onto his truck.

On Wednesday, August 28, 1996, Mrs. Swart's neighbor Mildred Kilgore went to Mrs. Swart's house. Kilgore found Mrs. Swart standing outside talking to a man who looked like Cowans. When Kilgore approached, Mrs. Swart told the man that she was leaving with her friend, and he left. After he had gone, Mrs. Swart and Kilgore went inside, and Mrs. Swart said, "Oh, I'm scared. * * * He made me so nervous. * * * He scared me so bad." Kilgore asked, "Who was it, Clara?" Mrs. Swart replied, "It was the man who came and got the chair [sic] off the garbage a few weeks ago."

At 8:00 a.m. on Thursday, August 29, a Clermont County Senior Services bus arrived at Mrs. Swart's house to pick her up. When Mrs. Swart did not respond to the sound of the driver's horn, the driver went to the door and knocked. She heard some noise inside the house, but Mrs. Swart did not answer the door; nor did Mrs. Swart answer her telephone when the Senior Services office called. Mrs. Swart's son came to visit her later in the day and found her body.

Mrs. Swart had been strangled with a purse strap, which was still around her neck. An electrical cord had been tied around her neck and to the handle of the refrigerator, and her hands had been tied with a telephone cord. She was still wearing her wedding ring and earrings. Officers found a palm print on a plastic bag covering a blender in Mrs. Swart's kitchen.

After talking to Kilgore, sheriff's investigators began to consider Cowans a suspect. Investigators discovered that Cowans was on parole, so they called his parole officer, Sandra Higgins, to help them obtain Cowans's fingerprints.

The investigators believed that they lacked enough evidence to obtain a search warrant for Cowans's house. However, Higgins decided to search it herself in order to determine whether Cowans had violated his parole. Two deputies helped her. Once of the deputies testified that he found an Emmett Kelly clown figurine in the closet of Cowans's bedroom. The figurine was later identified as belonging to Mrs. Swart. Subsequently, the deputies obtained Mrs. Cowans's permission to continue searching. In the closet, they found a small wooden car.

While searching a wooded area behind Cowans's house, a deputy found other items taken from Mrs. Swart's house, including a wooden jewelry box. The little wooden car found in Cowans's house appeared to have been broken off the lid of that box.

On the afternoon of September 2, Deputy Sheriff Jim DeCamp used a T-shirt belonging to Cowans to scent a bloodhound at Mrs. Swart's residence. Once scented, the dog appeared to track the scent from Mrs. Swart's backyard, over a fence, and for a short distance into a wooded area. The dog then lost the scent. After being rescented with the shirt, the dog appeared to follow it to the vicinity of a fallen tree where the handler was told that other deputies had found Mrs. Swart's personal property. At this location, which was near the back end of Cowans's property line, the dog was pulled off the scent. Again the dog was rescented and it continued to Cowans's Chevrolet Blazer, which was parked at his house.

Mamie Trammel, one of Cowans's neighbors, testified that she had a conversation with Cowans two days after the murder. Trammel testified that when she asked Cowans if he had heard about the murder, he said, "Yeah, isn't that terrible * * * to hang a lady by the refrigerator with her hands behind her back." This detail had not been made public by the sheriff's department.

Cowans was arrested on September 2. Deputy Sheriff Robert Evans drove him to the Clermont County Jail on a route that led past Mrs. Swart's house. Evans slowed down as he passed the house, as he later testified, "just to see what Mr. Cowans would do." Staring at the house, Cowans began to talk about the case. He complained that, as an "ex-con," he was being "singled out." Evans testified that Cowans said he had heard on the news that Mrs. Swart "was hung" and had later heard that she was strangled—information that had not been made public. Cowans also said "that he had been there [at Mrs. Swart's house] on one occasion * * * for the purpose of picking up a swing."

While confined in jail, Cowans discussed the charges against him with a fellow inmate, Marvin A. Napier. He told Napier at first that "he had chased some kids out of his backyard" and they "threw [some items] down on the ground. And he * * * went through some stuff and left what he didn't want and took what he did want."

Napier testified that Cowans later admitted to killing and robbing Mrs. Swart and gave details consistent with the facts of the case. For example, Napier testified that Cowans said he had found Mrs. Swart in the bathroom and "jerked [her] up off the toilet." This was consistent with the fact that investigators found urine in the toilet bowl. Napier also testified that Cowans said he had tied Mrs. Swart with the phone cord, strangled her with a purse strap, and "ransacked" the house; also, that an "old people's bus" arrived while he was there, and "[t]hey knocked on the door."

Napier further testified that Cowans said he left Mrs. Swart's house and walked home through the woods, that he went through the stolen property as he went, and that he left most of it in the woods as "junk" but brought home "[s]ome clown figurines" and some jewelry. Cowans allegedly told Napier "that he wished he'd have took the earrings and the wedding band off the lady's finger."

Cowans was indicted on four counts of aggravated murder. Count One alleged murder with prior calculation and design under R.C. 2903.01(A). Counts Two through Four alleged felony-murder under R.C. 2903.01(B). Each count carried four death specifications: one under R.C. 2929.04(A)(5), alleging that Cowans had a prior murder conviction, and three felony-murder specifications under R.C. 2929.04(A)(7). Other counts charged kidnapping under R.C. 2905.01(A)(2) (to facilitate commission of felony), kidnapping under R.C. 2905.01(A)(3) (with purpose to terrorize or inflict serious physical harm), aggravated robbery, and aggravated burglary.

Cowans was convicted of all counts and specifications. (The prior-conviction specification was tried to the court pursuant to R.C. 2929.022.) After the verdict of guilty was announced, Cowans continued to profess his innocence and refused to attend or participate in the sentencing phase. He refused to present mitigating evidence and asked that the witnesses who were prepared to testify in mitigation also refuse to cooperate. The jury recommended the death sentence, and the trial judge imposed it. *State v. Cowans, supra,* 87 Ohio St.3d at 68–71, 717 N.E.2d 298.

## II. State Court Procedural History

### A. Trial and Direct Appeal

Petitioner Cowans was indicted by the Clermont County Grand Jury on September 11, 1996. He was charged with four counts of aggravated murder, as to one victim, and each count contained multiple specifications making petitioner eligible for

the death penalty. Petitioner was also indicted on one count each of aggravated robbery and aggravated burglary, and two counts of kidnaping. Attorneys R. Daniel Hannon and Timothy Smith were appointed to represent petitioner. On November 21, 1996, petitioner notified the trial court that he wanted his attorneys to withdraw from the case and new counsel to be appointed. The trial court acquiesced and appointed Attorneys Bruce Wallace and Michael Kelly to represent petitioner. Again, on February 24, 1997, petitioner notified the trial court that he wanted his attorneys to withdraw and new counsel to be appointed. It was revealed at that time that petitioner had ceased communicating with his attorneys several days earlier. The trial court denied petitioner's motion, after which petitioner apparently resumed communications with his attorneys.

The culpability phase of the trial commenced on March 25, 1997. The jury began its deliberations on March 31, 1997 and was sequestered during the entirety of those deliberations. On April 1, 1997, petitioner was convicted as charged. As the verdicts were being read, petitioner interrupted and asked to leave the proceedings. He was taken to a room where he could view the proceedings via closed circuit television, but he subsequently overturned the television monitor.

Following the verdicts, jurors were sent home for several days prior to the commencement of the sentencing phase. Pursuant to petitioner's election, prior to trial, the petitioner agreed to try before the trial court the specification that he had previously been convicted of murder. The trial court heard evidence, during which petitioner was intermittently absent due to his disruptive behavior, and ultimately found petitioner guilty of the specification.

The sentencing phase of the trial began on April 11, 1997. At that time, counsel for petitioner expressly stated that they wanted neither a presentence investigation report nor a psychological evaluation. Further, petitioner instructed his attorneys to present no mitigation evidence. After the parties proffered evidence without the presence of the jury, the jury returned to listen to closing arguments and the trial court's jury instructions. The jury recommended that petitioner be sentenced to death and, on April 16, 1997, the trial court accepted the jury's recommendation and sentenced petitioner to death.

Represented by new counsel, petitioner appealed as of right to the Supreme Court of Ohio. Counsel for petitioner filed their brief on January 26, 1998 and raised the following propositions of law:

*Proposition of Law No. 1:* A person is denied the effective assistance of counsel in violation of the U.S. and Ohio Constitutions where there is a breakdown in communications between the attorney and client that prevents the attorney from adequately preparing and presenting a defense.

*Proposition of Law No. 2:* When a parole officer is used as a "stalking horse" on behalf of the police to assist police in evading the Fourth Amendment's warrant requirement, the search is illegal and all fruits of the search must be suppressed.

*Proposition of Law No. 3:* A defendant is prejudiced by the admission and narration of a tape made by the state following the use of a blood hound tracking an alleged trail as the tape is irrelevant, self-serving, lacking in any probative value, and highly prejudicial.

*Proposition of Law No. 4:* A trial court errs in admitting evidence of defendant's status as a parolee when it has determined that the prior offense shall not be admitted as same and similar evidence.

*Proposition of Law No. 5:* The admission of state's exhibit 58–1, the photo-

graph of a BB gun in Jesse Cowans' automobile was prejudicial as it required the jury to make an inference upon an inference.

*Proposition of Law No. 6:* The Eighth Amendment to the United States Constitution precludes a state from imposing a sentence of death unless the sentencing authority actually considers all relevant evidence of mitigation. Consequently, a capital defendant cannot interpose his Sixth Amendment right to self representation as a bar to introduction of mitigating evidence.

*Proposition of Law No. 7:* Jesse Cowans was denied the effective assistance of counsel guaranteed by the U.S. Constitution and the Ohio Constitution when counsel failed to present any mitigating evidence.

*Proposition of Law No. 8:* If a person attempts to forgo capital mitigation proceedings, a trial court must determine on the record if the person has the capacity to appreciate his position and make a rational choice with respect to presenting or waiving mitigation.

*Proposition of Law No. 9:* The trial court committed prejudicial error in admitting all evidence submitted by the State in the guilt-innocence phase into the mitigation phase as much as the evidence was not relevant to any specific aggravating circumstance. Such error denied Jesse Cowans his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and his corresponding state constitutional rights.

*Proposition of Law No. 10:* The death penalty authorized by the Ohio Revised Code deprives capitally-charged defendants of their lives without due process of law, denies equal protection and imposes cruel and unusual punishment in violation of the Ohio and United States Constitutions.

On October 20, 1999, the Supreme Court of Ohio issued a decision rejecting petitioner's propositions of law and affirming the judgment against him. *State v. Cowans,* 87 Ohio St.3d 68, 717 N.E.2d 298 (1999). Chief Justice Moyer dissented, believing that the majority had erred in not applying to petitioner's case the rule set forth in *State v. Ashworth,* 85 Ohio St.3d 56, 706 N.E.2d 1231 (1999), requiring the trial court to determine on the record, when a capital defendant evinces a desire to waive mitigation evidence, that the defendant's waiver is knowing and voluntary, and that the defendant is competent to effect the waiver. *Cowans, supra* 87 Ohio St.3d at 89–97, 717 N.E.2d 298 (Moyer, C.J., dissenting). The Ohio Supreme Court denied petitioner's motion for reconsideration on December 8, 1999. *State v. Cowans,* 87 Ohio St.3d 1462, 720 N.E.2d 543 (1999).

On May 1, 2000, the United States Supreme Court denied petitioner's application for a writ. J.A. Vol. IV, at 196.

## B. Postconviction Proceedings

Represented by the Ohio Public Defender's Office, petitioner filed a post-conviction petition to vacate or set aside the judgment. He raised the following grounds for relief:

*First Ground for Relief:* The judgment and sentence against Jessie J. Cowans are void or voidable because the recent amendments to the Ohio post-conviction process violate his constitutional rights to procedural due process which the Ohio and United States Constitutions afford him.

*Second Ground for Relief:* The judgment and sentence against Jessie J. Cowans are void or voidable because the trial court did not give the jury an augmented unanimity charge as to the death penalty specification; Specifications 2, 3, 4 to Count One of the Indictment; Specifications 2, 3, 4, to Count

Two of the Indictment; Specifications 2, 3, 4 to Count Three of the Indictment; Specifications 2, 3, 4 of Count Four of the Indictment.

*Third Ground for Relief:* The judgment and sentence against Jessie Cowans are void or voidable due to the ineffective assistance of his defense counsel during the sentencing phase of his capital trial. Defense counsel erred by failing to protect Mr. Cowans' Eight Amendment right to have the jury consider all relevant evidence of mitigation. In fact, substantial evidence existed but was not presented, which demonstrates that the aggravating circumstances did not outweigh the mitigating factors beyond a reasonable doubt.

*Fourth Ground for Relief:* The judgment and sentence against Jessie J. Cowans are void or voidable because trial counsel was ineffective for failure to request the appointment of independent counsel to present mitigation evidence when the client refused mitigation. A refusal to cooperate in the presentation of mitigation evidence in a client's own death penalty sentencing hearing suggests that there was a breakdown of the attorney-client relationship to the extent that counsel could no longer be effective in representing the interests of the client.

*Fifth Ground for Relief:* The judgment and sentence against Jessie J. Cowans are void or voidable due to his trial counsel's ineffectiveness for failure to request psychological evaluation of Mr. Cowans after his violent outbursts in and out of the courtroom. Mr. Cowans' outbursts preceded his refusal to participate in or allow counsel to present mitigation evidence at the defendant's sentencing hearing.

*Sixth Ground for Relief:* The judgment and sentence against Jessie J. Cowans are void or voidable because trial counsel was ineffective for failure to proffer the results of psychological examinations of Jessie, in the form of a diagnosis and interpretation of test results, as part of the record in the sentencing phase of the trial. The defense proffered raw data that was collected by and for Dr. Jeffrey Smalldon. Counsel failed, however, to call the psychologist to proffer testimony regarding the interpretation of these tests and records, or submission of a report to accompany the data. Dr. Smalldon, however, had sufficient information to submit a report to the court at the time of trial.

*Seventh Ground for Relief:* The judgment and sentence against Jessie J. Cowans are void or voidable because the trial court failed to order a psychological evaluation of Mr. Cowans after his outbursts and general demeanor in the courtroom before, and during the trial. The trial court has a constitutional duty to ensure that the rights of an accused are properly protected. Mr. Cowans' outbursts preceded his refusal to participate in or allow counsel to present mitigation evidence at the defendant's sentencing hearing.

*Eighth Ground for Relief:* The judgment and sentence against Jessie J. Cowans are void or voidable because the trial court was in error when it denied the motion for change of venue, based on media taint regarding publicity about the case, including Jessie's prior conviction and parole from prison on murder.

*Ninth Ground for Relief:* The judgment and sentence against Jessie J. Cowans are void or voidable because his trial counsel ineffectively and prejudicially failed to establish the blood type found on the swab of blood taken from the crime scene, and whether it belonged to the victim, the defendant, or some unknown person.

*Tenth Ground for Relief:* The judgment and sentence against Jessie J. Cowans are void or voidable because trial counsel ineffectively and prejudicially failed to introduce expert testimony regarding the scientific theory, scientifically acceptable procedure, and reliability of the "super-glue" method of preserving and identifying fingerprints. This process was used to identify Mr. Cowans' palmprints on a piece of plastic which was recovered from the victim's kitchen.

*Eleventh Ground for Relief:* Jessie J. Cowans was denied his right to a fair trial and impartial jury due to his trial counsel's failure to conduct adequate voir dire. Due to defense counsel's ineffectiveness, two jurors, who were clearly biased, were allowed to sit on the petit jury which eventually found Mr. Cowans guilty of all charges, and which sentenced him to death.

*Twelfth Ground for Relief:* Jessie Cowans was denied his right to a fair trial and impartial jury due to a trial court error during voir dire. The trial court erred by not *sua sponte* excusing two jurors, one of whom expressed bias against the slow nature of the capital process, and another who stated that she had knowledge of Mr. Cowans' prior felony conviction. As a result, both of these jurors were allowed to sit on the petit jury that convicted and sentenced Mr. Cowans to death.

*Thirteenth Ground for Relief:* Jessie Cowans's conviction and sentence are void or voidable because he received the ineffective assistance of his trial counsel during the trial phase of his capital proceedings. Defense counsel were ineffective by failing to properly challenge the validity of a warrantless search, which resulted in the seizing of evidence in violation of Mr. Cowans's constitutional rights.

*Fourteenth Ground for Relief:* Jessie Cowans's conviction and sentence are void or voidable because the trial court erred during the trial phase of his capital proceedings. The trial court improperly allowed the admission of evidence improperly seized during a warrantless search, thus violating Mr. Cowans's constitutional rights.

*Fifteenth Ground for Relief:* Based on evidence *dehors* the record, the judgment and sentence against Jessie Cowans are void or voidable because his trial counsel failed to obtain competent expert assistance, and due to this omission, incriminating evidence presented against Mr. Cowans went unrefuted. As a result, Mr. Cowans was denied the effective assistance of counsel guaranteed to him by the Sixth Amendment to the United States Constitution and similar provisions in the Ohio Constitution.

*Sixteenth Ground for Relief:* Jessie Cowans's conviction and death sentence are void or .voidable because the trial court erred by not suppressing the statements that Mr. Cowans made to Deputy Robert Evans. The failure to suppress these prejudicial statements denied Mr. Cowans his right to a fair trial.

*Seventeenth Ground for Relief:* Jessie Cowans's conviction and death sentence are void or voidable because the trial court erred during the jury selection phase of his capital trial. The trial court denied defense counsel's motion to allow twelve peremptory challenges, and as a result, defense counsel was forced to keep at least two, and possibly as many as four, jurors whom they would have otherwise removed had they been granted the additional peremptories. Thus, Mr. Cowans was denied his right to a fair and impartial jury.

*Eighteenth Ground for Relief:* Jessie Cowans's conviction and sentence are void or voidable because the trial court erred during the voir dire proceedings

of his capital trial. The trial court failed to request *sua sponte* that the State and the defense state the reasons for making their peremptory challenges. As a result, there was no way of discerning from the record whether the peremptory challenges exercised by the State and the defense comported with the gender-neutral requirement postulated by the United States Supreme Court in *J.E.B. v. Alabama,* 511 U.S. 127, 114 S.Ct. 1419, 1422, 128 L.Ed.2d 89 (1994). Thus violating Mr. Cowans's equal protection rights "to jury selection procedures that are free from state-sponsored group stereotypes..." *Id.*

*Nineteenth Ground for Relief:* Jessie Cowans's conviction and sentence are void or voidable because he received the ineffective assistance of counsel during the voir dire proceedings of his capital trial. Defense counsel failed to object to the trial court's decision that the State and the defense needed not to state the reasons for making their peremptory challenges. As a result, there was no way of discerning from the record whether the peremptory challenges exercised by the State and the defense comported with the gender-neutral requirement postulated by the United States Supreme Court in *J.E.B. v. Alabama,* 511 U.S. 127, 114 S.Ct. 1419, 1422, 128 L.Ed.2d 89 (1994). Thus violating Mr. Cowans's equal protection rights "to jury selection procedures that are free from state-sponsored group stereotypes..." *Id.*

*Twentieth Ground for Relief:* The judgment and sentence against Jessie Cowans are void or voidable because the death penalty, as administered in the State of Ohio, violates his constitutional right to protection from cruel and unusual punishment as guaranteed by the Eighth Amendment and the due process clause and equal protection clause of the Ohio and United States Constitutions.

J.A. Vol. IV, at 197. On September 21, 1998, the trial court issued a "Decision and Judgment" denying petitioner's postconviction action. J.A. Vol. V, at 82.

Petitioner appealed to the Court of Appeals for the Twelfth Appellate District and raised the following assignments of error:

*Assignment of Error No. I:* The trial court erred in granting the State's motion for judgment pursuant to R.C. 2953.21(D), dismissing Appellant's postconviction petition in violation of Appellant's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments.

1. The trial court erroneously dismissed Appellant's post-conviction claims by concluding that Appellant failed to show prejudice, and erroneously granted summary judgment against Appellant.

2. The trial court erroneously dismissed Appellant's post-conviction claims on the basis of res judicata, and the failure to show prejudice.

*Assignment of Error No. II:* The trial court erred in failing to rule on Appellant's motions for request of funds for expert assistance effectively overruling the motions before it dismissed Appellant's post-conviction petition in violation of Appellant's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution.

1. The trial court erroneously failed to rule on Appellant's motions for request of funds for expert assistance in post-conviction proceedings and effectively overruling the motions before dismissing Appellant's petition.

J.A. Vol. V, at Exh. 23. On September 7, 1999, the court of appeals affirmed the trial court's decision denying petitioner's postconviction action. J.A. Vol. V, at Exh. 26.

Petitioner appealed to the Supreme Court of Ohio and raised the following propositions of law in his Memorandum in Support of Jurisdiction:

*Proposition of Law No. 1:* The trial court erred in granting the State's motion to dismiss Appellant's post-conviction petition in violation of Appellant's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

*Proposition of Law No. 2:* The trial court erred in denying Appellant's motions for request for funds for expert assistance in violation of Appellant's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

1. The trial court erroneously denied Appellant's motions for request of funds for expert assistance.

*Proposition of Law No. 3:* The trial court must provide a post-conviction petitioner the opportunity to conduct discovery pursuant to the civil rules prior to considering a dispositive motion filed by the State of Ohio, and the trial court's failure to do so violated Appellant's rights as guaranteed by the Fifth, Sixth, Eighth, and Ninth, and Fourteenth Amendments of the United States Constitution and Article I, Sections 1, 2, 9, 10, 16, and 20 of the Ohio Constitution, and Ohio R. Civ. P. 26.

*Proposition of Law No. 4:* Ohio's post-conviction process does not provide an adequate corrective process in violation of the Due Process, Equal Protection, and the Supremacy Clauses of the United States Constitution.

On January 16, 2000, the Ohio Supreme Court rejected petitioner's appeal without opinion. J.A. Vol. V, at Exh. 29.

### III. Habeas Corpus Proceedings

Petitioner filed his initial habeas corpus action on July 31, 2000, and a stay of execution was issued on August 3, 2000.

Petitioner filed his first amended habeas corpus petition on May 3, 2001, and raises the following claims for relief:

*First Ground for Relief* Petitioner was denied the equal protection and due process of the laws when the Ohio Supreme Court failed to afford petitioner the benefit of the rule in *State v. Ashworth,* 85 Ohio St.3d 56, 706 N.E.2d 1231 (1999).

*Second Ground for Relief* Petitioner was denied the effective assistance of counsel in violation of the U.S. Constitution Amendments VI and XIV.

a. Failure to Present Mitigating Evidence.

b. Failure to Request a Competency Evaluation.

c. Failure to Insure that Waiver Was Voluntary.

d. Failure to Request Independent Counsel to Present Mitigating Evidence.

e. Failure to Proffer Mitigating Evidence.

f. Failure to Investigate And/Or Present Evidence Relating to Blood Type and Other Biological Evidence.

g. Failure to Challenge Finger/Palm Print Identification.

h. Failure to Request Funds for Expert Assistance.

i. Failure to Properly Investigate and Present Evidence on the Motion to Suppress.

j. Failure to Challenge "Dog Track Video" as Unreliable, Misleading, and Unfairly Prejudicial.

k. Failure to Challenge Testimony Relating to Time of Death.

*Third Ground for Relief* Petitioner was denied his Fourth Amendment rights when a parole officer was used as a "stalking horse" on behalf of the police to assist police in evading the Fourth Amendment's warrant requirement.

The search was illegal and all fruits of the search should have been suppressed.

**Fourth Ground for Relief** Petitioner was prejudiced by the admission and narration of a tape made by the state re-enacting a bloodhound tracking an alleged trail as the tape is irrelevant, self-serving, lacking any probative value, and highly prejudicial. Admission of such evidence violated petitioner's right to due process of law and a fair trial.

**Fifth Ground for Relief** Petitioner was denied his right to a fair trial and due process and the Eighth Amendment was violated where petitioner's status as a parolee was published to the jury but was irrelevant to any fact at issue in the trial.

**Sixth Ground for Relief** The Eighth Amendment was violated where a death sentence was imposed by a jury which had been prevented from hearing and considering relevant mitigating evidence in the absence of a constitutionally voluntary waiver by the defendant and record evidence of the defendant's competency to execute a voluntary waiver of constitutional rights.

**Seventh Ground for Relief** The Eighth Amendment to the United States Constitution precludes a state from imposing a sentence of death unless the sentencing authority actually considers all relevant evidence of mitigation. Consequently, a capital defendant cannot interpose his Sixth Amendment right to self representation as a bar to introduction of mitigating evidence.

**Eighth Ground for Relief** Petitioner's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments were violated where the trial court allowed re-admission and re-representation during the penalty phase of all exhibits previously admitted during the trial phase in this case.

**Ninth Ground for Relief** Petitioner was denied his rights to due process and a fair trial when the trial court failed to order a psychiatric evaluation to determine if he was competent to stand trial and competent to waive presentation of all mitigation evidence in violation of the Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution.

**Tenth Ground for Relief** Petitioner Jesse Cowans is actually innocent of the underlying charges for which he was convicted. As such, his conviction and sentence violate the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution.

**Eleventh Ground for Relief** A sentence of death by electrocution violates the Eighth Amendment. Furthermore, forcing a death sentenced individual to elect his own means of execution by choosing between electrocution and lethal injection constitutes cruel and unusual punishment in violation of the Eighth Amendment.

**Twelfth Ground for Relief** The death penalty authorized by the Ohio Revised Code deprives capitally-charged defendants of their lives without due process of law, denies equal protection, and imposes cruel and unusual punishment in violation of the United States Constitution. [A—L]

On September 14, 2001, in accordance with the Scheduling Order, respondent filed a motion to dismiss procedurally defaulted claims. Petitioner filed a memorandum in opposition on October 29, 2001, and respondent filed a response on November 15, 2001. Respondent's motion to dismiss procedurally defaulted claims is thus at issue.

IV. Procedural Default Discussion

■ It does not appear that every claim petitioner has raised in his habeas corpus petition was presented to the Ohio

courts either during the direct appeal or on collateral review. As a general matter, a defendant who is convicted in Ohio of a criminal offense has available to him more than one method of challenging that conviction. Claims appearing on the face of the record must be raised on direct appeal, or they will be waived under Ohio's doctrine of *res judicata. State v. Perry,* 10 Ohio St.2d 175, 226 N.E.2d 104 (1967). Claims that do not appear on the face of the record and claims of ineffective assistance of trial counsel where the defendant was represented on direct appeal by the same attorney who represented him at trial must be raised in a postconviction action pursuant to R.C. § 2953.21. *State v. Cole,* 2 Ohio St.3d 112, 443 N.E.2d 169 (1982). In 1992, a third procedure of review emerged. Claims of ineffective assistance of appellate counsel must be presented to the appellate court in a motion for delayed reconsideration pursuant to *State v. Murnahan,* 63 Ohio St.3d 60, 584 N.E.2d 1204 (1992) and Ohio R.App. P. 26(B).

■ In addition to raising each claim in the appropriate forum, a habeas litigant, in order to preserve his constitutional claims for habeas review, must present those claims to the state's highest court. *O'Sullivan v. Boerckel,* 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). Thus, the judgment of conviction on direct appeal, and any adverse decision rendered by the trial court in postconviction, must be appealed to both the Ohio Court of Appeals and the Supreme Court of Ohio. Likewise, any adverse decision rendered by the Ohio Court of Appeals on a motion for delayed reconsideration must be timely appealed to the Supreme Court of Ohio.

■ In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present his claims, then his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982)(per curiam); *Picard v. Connor,* 404 U.S. 270, 275–76, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). But if, because of a procedural default, the petitioner can no longer present his claims to the state courts, then he has also waived those claims for purposes of federal habeas corpus review, unless he can demonstrate both cause for the procedural default, as well as actual prejudice from the alleged constitutional error. *Murray v. Carrier,* 477 U.S. 478, 485, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Engle v. Isaac,* 456 U.S. 107, 129, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

■ In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir.1986). "First, the court must decide that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a state procedural rule was not complied with, and that

the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. *Id.* This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall,* 757 F.2d 94 (6th Cir.), *cert. denied,* 474 U.S. 831, 106 S.Ct. 99, 88 L.Ed.2d 80 (1985).

Respondent alleges that six of petitioner's claims, in their entirety or in part, are subject to one or more state procedural defaults. The Court will address each of the six claims individually to determine whether those claims identified by respondent are subject to the procedural defaults alleged by respondent. Respondent asserts procedural default against claims 1, 2, 6, 9, 10, and 11.

### A. *Claim One—Ohio Supreme Court's Refusal to Apply Ashworth Decision*

Petitioner argues in his first claim for relief that the Ohio Supreme Court violated his rights to equal protection and due process when it failed to apply its decision in *State v. Ashworth,* 85 Ohio St.3d 56, 706 N.E.2d 1231 (1999), to petitioner's case. In *Ashworth,* the Ohio Supreme Court announced that the waiver by a capital defendant of the presentation of mitigating evidence must be knowing and voluntary, and that a trial court must conduct an on-the-record inquiry when faced with a capital defendant who seeks to waive the presentation of mitigating evidence to ensure that the waiver is knowing and voluntary. Re-

spondent argues that this claim is procedurally barred because petitioner never presented it to any Ohio courts.

Petitioner presents two arguments against respondent's procedural default argument. First, according to petitioner, the Ohio Supreme Court essentially addressed the issue of whether its *Ashworth* decision should be applied to petitioner's case in its decision denying petitioner's direct appeal, even though petitioner had not expressly raised the issue.[1] Second, petitioner insists that he did present his claim to the Ohio Supreme Court at the earliest possible opportunity—namely, in a motion for reconsideration following the Ohio Supreme Court's decision denying petitioner's direct appeal. Petitioner explains that the *Ashworth* decision was issued approximately seven months prior the decision in his own case—but nearly a year after he had already filed his brief and argued his case.[2] Thus, the first opportunity that petitioner had to present new arguments to the Ohio Supreme Court following the issuance of the *Ashworth* decision was in a motion for reconsideration following the Ohio Supreme Court's decision denying his direct appeal.

Respondent challenges petitioner's assertion that he presented this claim in his motion for reconsideration. According to respondent, the bulk of the argument that petitioner raised in his motion for reconsideration focused—not on whether the Ohio Supreme Court was obligated to apply its *Ashworth* decision to petitioner's case—but on the substantive law and prin-

---

1. Logically, petitioner could not have expressly raised the issue; *Ashworth* had not been decided at the time that petitioner filed his appellate brief and argued his case.

2. According to petitioner's time line, petitioner filed his brief on direct appeal to the Ohio Supreme Court on April 16, 1998 and argued his case before the Ohio Supreme Court in

December of 1998. Several months later, on March 24, 1999, the Ohio Supreme Court decided *State v. Ashworth,* 85 Ohio St.3d 56, 706 N.E.2d 1231 (1999). Later that year, on October 20, 1999, the Ohio Supreme Court decided petitioner's direct appeal, *State v. Cowans,* 87 Ohio St.3d 68, 717 N.E.2d 298 (1999).

ciples governing waivers of fundamental constitutional rights. Respondent's position is that petitioner never explicitly argued in his motion for reconsideration that the Ohio Supreme Court's refusal to apply the *Ashworth* decision to petitioner's case violated his rights to equal protection and due process. Respondent does not address the effect on petitioner's first claim for relief of the Ohio Supreme Court's *sua sponte* statement holding "that our ruling in *Ashworth* is prospective only." *Cowans,* 87 Ohio St.3d at 86, 717 N.E.2d 298; J.A. Vol. IV, Exh.14, at 71.

 It is well established that claims challenging the validity of a criminal conviction or sentence must be raised at the earliest possible opportunity. *State v. Williams,* 74 Ohio St.3d 454, 659 N.E.2d 1253 (1996). There is no merit to the suggestion that petitioner somehow failed to present his claim regarding the applicability of the *Ashworth* decision at the earliest possible opportunity. The issue before the Court is not whether petitioner's presentation of this claim was timely, but whether petitioner presented the same federal constitution claim asserted here to the Ohio Supreme Court in his motion for reconsideration.

 It is well settled that, in order to satisfy the exhaustion requirement in habeas corpus, a petitioner must fairly present the substance of his constitutional claim to the state courts. *Anderson v. Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3, (1982); *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). A petitioner "fairly presents" the "substance of his federal habeas corpus claim" when the state courts are afforded sufficient notice and a fair opportunity to apply controlling legal principles to the facts bearing upon the constitutional claim. *Harless,* 459 U.S. at 6, 103 S.Ct. 276. Although a certain degree of tinkering is permissible, a petitioner does not fairly present a claim if he presents an issue to the state courts under one legal theory, and then presents the issue to the federal courts under a different legal theory. Rather, he must present to the federal court essentially the same facts and legal theories that were considered and rejected by the state courts. *Lorraine v. Coyle,* 291 F.3d 416, 425 (6th Cir.2002)(citing *Wong v. Money,* 142 F.3d 313, 322 (6th Cir.1998); *Lott v. Coyle,* 261 F.3d 594, 607, 609 (6th Cir.2001), *Lott v. Bagley,* 534 U.S. 1147, 122 S.Ct. 1106, 151 L.Ed.2d 1001 (2002)).

 With these principles in mind, the Court must determine whether petitioner fairly presented his claim alleging that the failure of the Ohio Supreme Court to apply the *Ashworth* decision to petitioner's case violated petitioner's rights to equal protection and due process. The precise argument set forth by petitioner in his first claim for relief is that the Ohio Supreme Court violated his rights to equal protection and due process when it failed to apply the *Ashworth* decision to petitioner's case. According to petitioner, *Ashworth* established a bright line rule for dealing with capital defendants who seek to waive the presentation of mitigating evidence, but did not mark a clear break from established law. Petitioner argues that the facts of his case were nearly identical to the facts in *Ashworth,* and that the Ohio Supreme Court had no rationale basis for discriminating against him by not affording him the protections of the *Ashworth* rule. Petitioner reasons that, since *Ashworth* was not a clear break from established law, it should have been applied to petitioner and any similarly situated defendants whose convictions were pending on direct review.

In his motion for reconsideration to the Ohio Supreme Court, petitioner reiterated his claim that the trial court erred in not

determining on the record either that petitioner was competent to waive his right to present mitigating evidence or that petitioner's waiver in that regard was knowing and voluntary. Petitioner challenged the Ohio Supreme Court's conclusion that it was possible for the trial court in petitioner's case to have determined that petitioner was competent, and that petitioner's waiver was knowing and voluntary, without holding a competency hearing or conducting a waiver colloquy. Petitioner explicitly requested the Ohio Supreme Court to "follow the syllabus law created in *State v. Ashworth,* 85 Ohio St.3d 56, 706 N.E.2d 1231 (1999)," and explicitly assailed the Ohio Supreme Court's holding "that the syllabus law in *State v. Ashworth, supra* is prospective only." Motion for reconsideration, J.A. Vol. IV, Exh. 15, at 84–85. Equating the right to present mitigating evidence with other fundamental constitutional rights, petitioner went on to argue that the Ohio Supreme Court's decision was contrary to United States Supreme Court case law forbidding the presumption of a waiver of fundamental rights in the absence of a record clearly indicating a knowing and voluntary waiver.

Petitioner's motion for reconsideration did not expressly argue that the Ohio Supreme Court's failure to apply *Ashworth* violated the Due Process and Equal Protection Clauses. But it was clear that petitioner was urging the Ohio Supreme Court to follow the procedural requirements it had recently established in *State v. Ashworth,* and find that petitioner's waiver of the right to present mitigating evidence was constitutionally deficient because it was not knowing and voluntary. According to cases governing "fair presentment," what petitioner did was enough. The Ohio Supreme Court was squarely presented with the issue of whether it should apply its *Ashworth* decision to petitioner's case—an issue that court had previously rejected in its decision denying petitioner's direct appeal. It is not as if petitioner is presenting to this Court a totally different claim than that which he presented to the Ohio Supreme Court in his motion for reconsideration. The constitutional claim before this Court is better characterized as a refined and expanded presentation of the issue that was considered and rejected by the Ohio Supreme Court. This Court is satisfied that petitioner fairly presented his claim to the Ohio Supreme Court in his motion for reconsideration of the Supreme Court's decision denying his direct appeal.

■ Even assuming that petitioner somehow failed to fairly present his first claim for relief—an assertion this Court wholly rejects—the fact remains that the Ohio Supreme Court *did* address the issue of whether the *Ashworth* rule should be applied to petitioner's case. Though petitioner had not explicitly raised the question, the Ohio Supreme Court held in petitioner's case that its *Ashworth* rule would be given only prospective application.

While [the procedure used by the trial court in Petitioner Cowans' case] fell short of that established in *Ashworth,* we hold that our ruling in *Ashworth* is prospective only. We cannot hold the trial court accountable for not following a procedure that was not established, or even foreshadowed, when the case was tried.

\* \* \* \* \* \*

To sum up: Cowans's desire to waive mitigation did not automatically require a competency hearing, nor did the record create a doubt as to his competence such as to require a competency hearing; the record indicates that Cowans's waiver was knowing and voluntary; and, although the specific procedural requirements of *State v. Ashworth* were not complied with in full, they are prospective only and hence do not apply here.

Accordingly, Cowans's eighth proposition of law is overruled.

*Cowans,* 87 Ohio St.3d at 86, 717 N.E.2d 298; J.A. Vol. IV, Exh.14, at 71. Thus, the Ohio Supreme Court adjudicated the merits of petitioner's habeas claim that *Ashworth* should have been applied to his case even though his trial took place before *Ashworth* was decided. The Ohio Supreme Court may not have cited federal constitutional law or articulated its reasoning; but it clearly contemplated the circumstances under which a newly created procedure should be applied to cases that were tried before the procedure was announced but that were still pending on direct review when the procedure was announced. In *Harris v. Stovall,* 212 F.3d 940, 943 (6th Cir.2000), *cert. denied,* 532 U.S. 947, 121 S.Ct. 1415, 149 L.Ed.2d 356 (2001), the Court of Appeals for the Sixth Circuit suggested, in the context of what standard of review to use with respect to a vague or unexplained state court decision, that a state court decision rejecting a claim on the merits is no less an "adjudication on the merits" than one which specifically references federal constitutional law.

The Court therefore rejects respondent's argument that petitioner's first claim for relief is procedurally barred. Petitioner fairly presented his claim to the Ohio Supreme Court in his motion for reconsideration following the Ohio Supreme Court's decision denying his direct appeal. That is, he raised his claim at the earliest possible opportunity and provided the Ohio Supreme Court with sufficient notice that he was challenging the propriety of its decision to limit *Ashworth* to only prospective application. Further, the Ohio Supreme Court essentially considered and rejected the idea of applying *Ashworth* to cases that had already been tried, even though petitioner had not (and could not have) explicitly raised that issue. Respondent's motion to dismiss petitioner's first claim for relief as procedurally barred is denied.

### B. Claim Two—Ineffective Assistance of Trial Counsel

Petitioner argues in his second ground for relief that he was denied his Sixth Amendment right to effective assistance of trial counsel. There are eleven sub-parts to petitioner's claim, only four of which are alleged by respondent to be procedurally barred. Respondent argues that claim 2(c), *i.e.,* trial counsel's failure to ensure that petitioner's waiver of the presentation of mitigating evidence was voluntary, was never presented to the Ohio courts. Respondent also argues that claims 2(b), *i.e.,* trial counsel's failure to request a competency evaluation, 2(f), *i.e.,* trial counsel's failure to present blood type and other biological evidence, and 2(g), *i.e.,* trial counsel's failure to challenge the fingerprint/palm print identification, were rejected by the state courts during postconviction under Ohio's doctrine of *res judicata.* Petitioner insists that he presented claim 2(c) on direct appeal and in postconviction, and that he did not violate Ohio's *res judicata* rule when he raised claims 2(b), 2(f), and 2(g) in postconviction. The Court will address each claim seriatim.

### Claim 2(c)—Failure to Ensure That Waiver Was Knowing and Voluntary

■ Petitioner argues in claim 2(c) that his trial attorneys were ineffective for failing to take any steps to ensure that his waiver of the right to present mitigating evidence was knowing and voluntary. Petitioner insists that he fairly presented this claim on direct appeal, in his seventh and eighth propositions of law; and that he subsequently asserted it in postconviction, supported by evidence outside the trial record, only to have the state courts improperly reject in on grounds of *res judi-*

*cata.* Respondent disputes petitioner's assertion that he fairly presented this claim on direct appeal, arguing that the legal theories that petitioner presented on direct appeal are different than those presented in claim 2(c). Respondent's argument is well taken.

As noted *supra,* petitioner must fairly present the substance of his constitutional claim to the state courts. *Anderson v. Harless,* 459 U.S. at 6, 103 S.Ct. 276; *Picard v. Connor,* 404 U.S. at 275, 92 S.Ct. 509. Although a certain degree of variance is permissible, a petitioner does not fairly present a claim if he presents an issue to the state courts under one legal theory, and then presents the issue to the federal courts under a different legal theory. *Lorraine v. Coyle,* 291 F.3d at 425 (citing *Wong v. Money,* 142 F.3d at 322; *Lott v. Coyle,* 261 F.3d at 607, 609). State courts must be afforded sufficient notice and a fair opportunity to apply controlling legal principles to the facts bearing upon the constitutional claim. *Harless,* 459 U.S. at 6, 103 S.Ct. 276.

A comparison between the ineffectiveness allegation presented in claim 2(c), and the ineffectiveness allegations intimated in the seventh and eighth propositions of law in petitioner's direct appeal, reveals that petitioner did not fairly present claim 2(c). The argument set forth in claim 2(c) is that petitioner's trial attorneys were ineffective for failing to ensure that the record would demonstrate that petitioner's waiver of the right to present mitigating evidence was knowing, intelligent, and voluntary by either requesting the trial judge to conduct an on-the-record colloquy or doing so themselves.

Careful review of petitioner's brief to the Ohio Supreme Court on direct appeal confirm respondent's assertion that petitioner's seventh proposition of law alleged exclusively that petitioner's trial attorneys had been constitutionally ineffective for abiding by petitioner's wishes that they not present any mitigation evidence on his behalf. (Brief of Defendant–Appellant, J.A. Vol. III, Exh. 12, at 51–58). Petitioner's arguments were twofold. First, petitioner argued that defense attorneys who fail to present mitigating evidence in a capital case, even when they are following the express wishes of their client, are nonetheless ineffective because of the near certainty that such inaction will lead to a death sentence. Second, in an effort to call into question whether the decision to forgo mitigation was the result of petitioner's express wishes, petitioner focused on the irreconcilable conflict and absence of communication that existed between petitioner and defense counsel, thereby suggesting that defense counsel could not possibly know what petitioner's express wishes really were. Aside from a passing suggestion that the decision to forgo mitigation was not the product of petitioner's "informed consent," nowhere in his seventh claim for relief did petitioner argue that his trial attorneys were ineffective for failing to ensure that petitioner's waiver of the right to present mitigation evidence was knowing, intelligent, and voluntary.

The record likewise confirms respondent's assertion that petitioner's eighth proposition of law on direct appeal focused—not on the failure of trial counsel to ensure that petitioner's decision to waive mitigation was knowing and voluntary—but the failure of the trial counsel to ensure *on the record* that petitioner's decision to waive mitigation was knowing and voluntary. (Brief of Defendant–Appellant, J.A. Vol.III, Exh.12, at 58–62). Petitioner argued in his eighth proposition of law that, when a capital defendant seeks to forego the presentation of mitigating evidence, it is the responsibility of *the trial court* to determine on the record that the defendant has the capacity to appreciate his position and make a rational choice to forego mitigation, as well as whether the

waiver is knowing and voluntary. *Id.* at 58. Any references in petitioner's argument to trial counsel's duties under such circumstances, or citations to cases that discussed trial counsel's responsibilities, were to buttress the argument that the trial court committed error by failing to determine on the record his competence to knowingly and voluntarily forego the presentation of mitigating evidence. Nowhere did petitioner present substantive arguments alleging the unreasonableness or deficiency of defense counsel's performance, or the prejudice that resulted from counsel's deficient performance, under the well known two-prong test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Ohio Supreme Court simply could not have been on notice by petitioner's eighth proposition of law that petitioner sought to challenge the effectiveness of his attorneys' representation in connection with his decision to waive mitigation.

■■■ Having determined that petitioner did not fairly present the substance of claim 2(c) to the state courts on direct appeal, the Court is left to determine whether petitioner succeeded in presenting his ineffectiveness allegation in postconviction. Petitioner insists that he did; respondent did not address petitioner's argument in this regard.

As with the arguments that petitioner raised on direct appeal, the Court concludes that the arguments that petitioner raised in postconviction were not sufficiently similar to the ineffectiveness allegations raised in claim 2(c) to support a conclusion that petitioner fairly presented claim 2(c). The arguments presented in petitioner's third and fifth claims for relief

in his postconviction action focused on his competency to waive mitigation, and the unreasonableness of his attorneys' decisions, in light of petitioner's aberrant and disruptive behavior in court, (1) to acquiesce in petitioner's request that no mitigation evidence be presented on his behalf, and (2) not to request a psychological evaluation of petitioner. (First Amended Post–Conviction Petition, J.A. Vol.IV, Exh.19, at 206–208, 211–13). Even indulging petitioner every benefit of the doubt, the Court simply cannot find that the third and fifth claims in petitioner's postconviction action, construed separately or together, set forth a conspicuous argument that petitioner's trial attorneys were ineffective for failing to ensure on the record that petitioner's decision to waive the presentation of mitigation evidence was knowing, intelligent, and voluntary.

For the foregoing reasons, the Court concludes that petitioner failed to fairly present claim 2(c). When a habeas petitioner fails to fairly present his constitutional claim to the state courts, and state rules forbid him from returning to the state courts to present his claim, then his claim is exhausted but procedurally defaulted. *See Gray v. Netherland,* 518 U.S. 152, 161, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996); *Gall v. Parker,* 231 F.3d 265, 283–84 (6th Cir.2000), *cert. denied,* 533 U.S. 941, 121 S.Ct. 2577, 150 L.Ed.2d 739 (2001). Under such circumstances, he is not entitled to habeas corpus review absent showing of cause for his failure to fairly present the claim and actual prejudice from the alleged error. *See Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Petitioner has demonstrated neither.[3] That being so, the

---

**3.** Petitioner presents a general argument at the beginning of his memorandum in opposition insisting instead that he will be able to demonstrate cause and prejudice for any claim that the Court finds to be procedurally defaulted, if the Court grants him leave to conduct discovery and holds an evidentiary hearing. (Petitioner's memorandum in opposition, doc.no. 25, at 7–8).

Court concludes that petitioner has waived claim 2(c). Respondent's motion to dismiss claim 2(c) is be granted.

### Claim 2(b)—Failure to Request Competency Evaluation

Petitioner argues in claim 2(b) that his trial attorneys were ineffective for failing to request an evaluation to determine whether petitioner was competent, in light of petitioner's bizarre and disruptive behavior in court, as well as petitioner's irrational demand to waive mitigation against counsel's advice. Petitioner argues that he presented his claim in his postconviction action, that he supported it with evidence outside the record, and that the Ohio courts erred in denying his claim on the basis of *res judicata*. Respondent does not answer directly petitioner's argument that he did not violate Ohio's *res judicata* rule, arguing only that the state courts denied petitioner's claim on that basis and that the Sixth Circuit has consistently held that Ohio's *res judicata* rule is an adequate and independent ground upon which to deny relief. The record and controlling law favor petitioner's stance.

When the state alleges that a habeas claim is defaulted because the petitioner violated a state procedural rule, a federal habeas court reviewing the claim must apply the four part *Maupin* test. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.1986). The first part of the *Maupin* test requires the Court to determine whether a state procedural rule was applicable to petitioner's claim, and, if so, whether petitioner violated that rule. As noted *supra*, claims appearing on the face of the record must be raised on direct appeal or they will be waived under Ohio's doctrine of *res judicata*. *State v. Perry*, *supra*. Claims that involve matters outside the record must be raised and supported by evidence *dehors* the record in state postconviction proceedings. In *Greer v. Mitchell*, 264 F.3d 663, 674–76 (6th Cir.2001), *cert. denied*, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002), the Court of Appeals for the Sixth Circuit reminded that a federal habeas court must make an independent determination whether a state procedural rule was violated. With this in mind, the Court must determine whether petitioner violated Ohio's *res judicata* rule when he raised claim 2(b) in postconviction instead of on direct appeal.

 Petitioner argues in claim 2(b) that his trial attorneys were constitutionally ineffective for failing to request a competency hearing, in light of petitioner's disruptive behavior in court and petitioner's decision to waive mitigation against counsel's advice. Those allegations might appear, at first glance, to be matters of record because petitioner's allegations of deficient performance on the part of his attorneys involve his disruptive behavior and adamant refusal to allow mitigation evidence to be presented—behavior that was well documented throughout the record.

 In determining whether *res judicata* applies to a constitutional claim, the inquiry is properly focused on whether the claim genuinely relies on the evidence that was not a matter of record. *State v. Cole*, *supra*, 2 Ohio St.3d 112, 443 N.E.2d 169. Thus, non-record evidence submitted during postconviction proceedings to support a constitutional claim cannot be superfluous or cumulative to the evidence of record; rather, that evidence must genuinely support the claim in a manner that no record evidence could. *See State v. Powell*, 90 Ohio App.3d 260, 268, 629 N.E.2d 13 (Ohio App. 1 Dist.1993)(holding that additional evidence offered in postconviction to support claim of trial counsel ineffectiveness during mitigation was merely cumulative to evidence presented at trial). In the instant case, the trial record was replete with instances of behavior on petitioner's

part that were aberrant and disruptive. Also reflected on the record is petitioner's adamant decision to forego the presentation of mitigation evidence, against the advice of his trial attorneys. The failure on the part of petitioner's trial attorneys to seek a competency evaluation, in light of petitioner's behavior, forms the basis of petitioner's argument under the first part of the *Strickland* test that his trial attorneys fell below an objective standard of reasonableness in their inaction. Were that enough to satisfy the *Strickland* test, petitioner certainly could have fully and fairly litigated this claim on direct appeal based solely on the record.

But the *Strickland* test also requires a showing of prejudice. Petitioner must demonstrate that, but for counsel's unreasonable and deficient performance, there is a reasonable probability that the result of the proceeding would have been different. "A reasonable probability is a probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. The gravamen of petitioner's argument is that he may very well have been incompetent and without the capacity to comprehend his position or appreciate the ramifications of his decision to waive mitigation, and that counsel's failure to have him evaluated for competency prejudiced the outcome of his trial. Petitioner could not possibly have argued this on direct appeal based only on the record. At trial, although a mitigation specialist, James Crates, and psychologist, Dr. Jeffrey Smalldon, had been appointed to assist defense counsel in preparing petitioner's mitigation case, and although Dr. Smalldon was prepared to testify at the

mitigation hearing, the fact remains that, pursuant to petitioner's demand, absolutely no evidence or testimony was introduced on behalf of petitioner at the mitigation hearing. (J.A. Transcript Vol.V, Exhs. 49–50). Consequently, there was no evidence on the record from which petitioner could have demonstrated that counsel's failure to obtain a competency evaluation prejudiced the outcome of the trial. *Greer v. Mitchell, supra*, 264 F.3d at 675 ("Although counsel could certainly have raised an ineffective assistance of counsel claim on direct appeal, the precise arguments advanced in his petition for post-conviction relief require significant supplementation of the trial record."). Petitioner could not possibly have satisfied the prejudice prong of the *Strickland* test, had he raised this claim on direct appeal.

This aspect of his trial counsel ineffectiveness claim relies on and purportedly was supported by the affidavit and accompanying academic materials of Dr. Kristen Haskins that were submitted in postconviction.[4] While discussing her impressions and opinions about petitioner's tumultuous background, and the resulting impact on his emotional and social development, Dr. Haskins did not express an opinion about whether petitioner was competent or offer a specific diagnosis of possible psychological disorders. J.A. Vol.IV, Exh.19, at 300–414. Although the support offered by Dr. Haskins' affidavit is marginal, at best, it bears reminding that petitioner's requests for discovery and an evidentiary hearing to develop and present more thorough evidence were denied by the trial court. More importantly, although the affidavit

---

**4.** Petitioner argued in the third claim of his postconviction action that trial counsel erred by failing to ensure that the jury considered all relevant mitigation evidence. In that claim, petitioner specifically argued that defense counsel were ineffective for failing to request a competency evaluation, in light of petitioner's extreme behavior. J.A. Vol.IV, Exh.19, at 206–208. Petitioner went on to argue in the fifth claim of his postconviction action that his defense attorneys were ineffective for failing to request a psychological evaluation of petitioner after his violent outbursts in and out of the courtroom. *Id.* at 211–13.

by Dr. Haskins and the accompanying academic materials may not be the most compelling evidence in support of petitioner's claim that he was prejudiced by trial counsel's failure to request a competency evaluation, those materials were not in the record on direct appeal. In fact, no medical testing was of record in the direct appeal. *See Greer v. Mitchell, supra,* 264 F.3d at 675 ("While the probative value of this evidence is difficult to assess in retrospect, it seems clear that this material and the arguments that logically flow from it are outside the trial record."). That being so, the Court concludes that petitioner did not violate Ohio's *res judicata* rule when he raised claim 2(b) in his postconviction action and supported that claim with evidence outside the trial record—namely, an affidavit by Dr. Kristen Haskins and accompanying academic materials.

This Court's conclusion regarding the purported violation of Ohio's *res judicata* rule is at odds with the conclusion reached by the Ohio courts. The Ohio Court of Appeals determined, as a matter of state law, that petitioner's trial counsel ineffectiveness claims were barred by *res judicata* either because they did not rely on evidence outside the record and, therefore, could have been addressed on direct appeal. Thus, while it appears to this Court that petitioner properly presented this claim to the Ohio courts in postconviction, those courts held that the claim was procedurally barred. The question then is whether the claim is procedurally barred in federal habeas corpus. In *Greer,* the Sixth Circuit addressed this dilemma:

> Generally, a federal habeas court sitting in review of a state-court judgment should not second guess a state court's decision concerning matters of state law. (citation omitted). Nevertheless, when the record reveals that the state court's reliance upon its own procedural default is misplaced, we are reluctant to conclude categorically that federal habeas

> review of the purportedly defaulted claim is precluded.

*Greer v. Mitchell,* 264 F.3d at 675. This Court is bound by the Sixth Circuit's reasoning, and therefore denies respondent's motion to dismiss claim 2(b) as procedurally defaulted.

*Claim 2(f)—Failure to Present Blood Type Evidence or other Biological Evidence*

■ In claim 2(f), petitioner argues that his trial attorneys were ineffective for failing to investigate and present evidence to demonstrate whether blood and other biological evidence collected at the crime scene included or excluded petitioner as the source. Petitioner raised this precise claim as the ninth ground for relief in his postconviction action, though he submitted no evidence *dehors* the record in support. In response to respondent's argument that claim 2(f) is procedurally defaulted, petitioner argues, with colorful reference to Joseph Heller's novel, *Catch–22,* that he was prohibited from submitting evidence *dehors* the record because the state courts denied his requests for expert funds and discovery; but that the state courts denied his requests for expert funds and discovery *because* he failed to submit evidence *dehors* the record. Petitioner's argument, however colorful, is not persuasive.

■ As with the alleged default of claim 2(b) discussed above, under the *Maupin* test, the question of whether claim 2(f) is procedurally barred depends on this Court's determination of whether petitioner violated Ohio's doctrine of *res judicata* by raising claim 2(f) in postconviction instead of on direct appeal. Under Ohio law, claims of ineffective assistance of counsel that are capable of being fairly decided without resort to evidence outside the record must be raised on direct appeal or they will be waived. *Greer v. Mitchell,*

*supra,* 264 F.3d at 674 (citing *State v. Cole,* 2 Ohio St.3d 112, 443 N.E.2d 169 (1982)(syllabus)). In the instant case, petitioner concedes that he did not support this clam of trial counsel ineffectiveness with evidence *dehors* the record, but argues that the evidence existed and that he was precluded from developing or presenting that evidence, due to the unjustified failure of the state courts to grant his requests for expert funds and discovery. Petitioner's argument is not well taken.

█ A claim is not properly raised in postconviction just because, in theory, it relies on evidence outside the record; it must actually be supported by evidence outside the record. The fact that petitioner was not afforded expert funds or discovery during his state postconviction proceedings does not justify his failure to support his claim with evidence outside the record.

█ It is well settled under Ohio law that petitioners pursuing postconviction relief pursuant to R.C. § 2953.21 are not entitled to discovery as a matter of law. *State v. Kinley,* 136 Ohio App.3d 1, 21, 735 N.E.2d 921 (Ohio App. 2 Dist.1999); *State v. Spirko,* 127 Ohio App.3d 421, 429, 713 N.E.2d 60 (1998); *State v. Lawson,* 103 Ohio App.3d 307, 315, 659 N.E.2d 362 (1995). Petitioner submitted absolutely nothing from which the trial court would have been justified in granting petitioner's requests for expert funds or discovery. Ohio courts typically require claims to be supported by some sort of evidentiary documents before the courts will grant additional factual development through discovery or a hearing. Ohio's procedure is not unreasonable, *Jamison v. Collins,* 100 F.Supp.2d 521, 567–68 (S.D.Ohio 1998), and the Court notes that petitioner managed to submit evidentiary documents in support of other claims he raised in postconviction, even without the benefit of discovery or expert funds.

Returning to the *Maupin* test, the Court concludes that petitioner violated Ohio's *res judicata* doctrine by raising claim 2(f) in postconviction instead of on direct appeal, since the claim was not supported by evidence outside the trial record. Under the second part of the *Maupin* test, the Court further concludes that the state courts actually enforced the procedural rule. The last state court to issue a reasoned decision addressing the ineffectiveness allegation raised in claim 2(f) was the Ohio Court of Appeals in postconviction. That court rejected petitioner's claim exclusively and unambiguously on the basis of *res judicata.* Opinion, J.A. Vol.V, Exh.26, at 15.

█ The Court further concludes, under the third part of the *Maupin* test, that Ohio's doctrine of *res judicata* is an adequate and independent state ground upon which to deny relief. The Court of Appeals for the Sixth Circuit, as well as other courts within this district, have consistently held, and recently reaffirmed, that Ohio's doctrine of *res judicata, i.e.,* the *Perry* rule, is an adequate ground for denying federal habeas relief. *Norris v. Schotten,* 146 F.3d 314, 332 (6th Cir.), *cert. denied,* 525 U.S. 935, 119 S.Ct. 348, 142 L.Ed.2d 287 (1998); *see also Zuern v. Tate,* 101 F.Supp.2d 948, 959–960 (S.D.Ohio 2000); *Jamison v. Collins,* 100 F.Supp.2d 647, 768 (S.D.Ohio 2000). The doctrine of *res judicata* is stated in unmistakable terms in countless Ohio decisions, and Ohio courts have consistently refused, in reliance on that doctrine, to review the merits of claims. *See State v. Cole,* 2 Ohio St.3d 112, 443 N.E.2d 169; *State v. Ishmail,* 67 Ohio St.2d 16, 423 N.E.2d 1068. Further, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. That Ohio courts may on occasion elect to ignore or

forgive non-compliance with its procedural rules has no bearing on the general question of whether the *Perry* rule is adequate. With respect to the independence prong, the Court concludes that *res judicata* does not rely on or otherwise implicate federal law. Accordingly, this Court is satisfied from its own review of relevant case law that the *Perry* rule is an adequate and independent ground for denying relief.

■ Once the Court determines that a claim is subject to procedural default, and that the procedural default is an adequate and independent ground upon which to deny relief, habeas corpus review is precluded unless the petitioner can demonstrate cause and prejudice for the procedural default, or that his claim should be reviewed under the narrow fundamental miscarriage of justice exception. Petitioner has demonstrated neither of these exceptions, arguing that he is entitled to discovery and an evidentiary hearing to do so. Absent a showing of either, the Court concludes that claim 2(f) is procedurally defaulted. Respondent's motion to dismiss claim 2(f) is be granted.

### Claim 2(g)—Failure to Challenge Finger/Palm Print Identification

■ In claim 2(g), petitioner argues that his trial attorneys were ineffective for failing to challenge evidence presented by the state that a palm print allegedly matching petitioner's palm print was found in the victim's kitchen. Specifically, petitioner assails the failure of his trial attorneys to challenge the scientific reliability of the "super glue" method that was used to collect and identify the palm print from the victim's kitchen. Petitioner concedes that his trial attorneys objected to inability of Deputy Holt to explain how the "super glue" method worked, but argues that his attorneys were ineffective for not raising the issue *in limine* or introducing expert testimony to undermine the reliability of the "super glue" method. Petitioner raised this precise issue in the tenth claim for relief in his postconviction petition. Respondent argues that petitioner's claim is barred by *res judicata* because petitioner raised it in postconviction instead of on direct appeal. Petitioner concedes that he failed to support this claim in postconviction with evidence *dehors* the record, but argues, as he did in connection with claim 2(f), that he was precluded from developing or presenting that evidence, due to the unjustified failure of the state courts to grant his requests for expert funds and discovery.

For the reasons discussed more fully above in connection with the default of claim 2(f), the Court rejects petitioner's argument and agrees with respondent that petitioner violated Ohio's doctrine of *res judicata* by raising the ineffectiveness allegation set forth in claim 2(g) in postconviction instead of on direct appeal. Although the claim would appear to rely on evidence outside the record, the fact remains that petitioner attached absolutely no evidence outside the record to support the claim. That being so, he violated Ohio's *res judicata* doctrine and the first part of the *Maupin* test has been satisfied. As for the second part of the *Maupin* test, a review of the appellate court's decision affirming the trial court's dismissal of petitioner's postconviction action reveals that the Ohio courts clearly and expressly relied on *res judicata* in denying the ineffective assistance of counsel claim set forth in claim 2(g). J.A. Vol.V, Exh.26, at 15. The Court has already determined that Ohio's doctrine of *res judicata* is adequate and independent, and that petitioner has not demonstrated that the procedural default should be excused under either the cause-and-prejudice test or the narrow miscarriage of justice exception. Accordingly,

respondent's motion to dismiss claim 2(g) as procedurally defaulted is granted.

### C. *Claim Six—Death Sentence Invalid Because Jury Did Not Consider Mitigating Evidence*

██ Petitioner argues in his sixth claim for relief that his death sentence violates the Eighth Amendment, insofar as it was imposed by a jury that was prevented from considering or weighing relevant mitigation evidence in the absence of a constitutionally valid waiver by petitioner or evidence demonstrating petitioner's competency. Petitioner argues simply that there was no record evidence demonstrating his competency, while there was substantial record evidence giving rise to an inference of petitioner's incompetence, and that there was no record evidence of a voluntary waiver by petitioner. Petitioner goes on to argue that substantial mitigating evidence was available, but was neither presented nor even proffered, thereby creating an unacceptable risk of an arbitrary and capricious infliction of the death penalty. Respondent argues that petitioner's sixth claim for relief is procedurally defaulted because it was not presented in any of the Ohio courts under the same theory in which it has been presented to this Court. Petitioner insists that this claim was fairly presented as the sixth proposition of law on direct appeal, even if not in the exact language.

As noted *supra*, petitioner must fairly present the substance of his constitutional claim to the state courts. *Anderson v. Harless*, 459 U.S. at 6, 103 S.Ct. 276; *Picard v. Connor*, 404 U.S. at 275, 92 S.Ct. 509. Although a certain degree of variance is permissible, a petitioner does not fairly present a claim if he presents an issue to the state courts under one legal theory, and then presents the issue to the federal courts under a different legal theory. *Lorraine v. Coyle*, 291 F.3d at 425 (citing *Wong v. Money*, 142 F.3d at 322;

*Lott v. Coyle*, 261 F.3d at 607, 609). State courts must be afforded sufficient notice and a fair opportunity to apply controlling legal principles to the facts bearing upon the constitutional claim. *Harless*, 459 U.S. at 6, 103 S.Ct. 276.

Thus, to determine whether petitioner fairly presented the substance of his sixth claim for relief, the Court must compare the claim that petitioner raised in the state courts to the claim that petitioner seeks to present in this Court. Petitioner's sixth claim for relief, as it appears in his amended habeas corpus petition, states:

> The Eighth Amendment was violated where a death sentence was imposed by a jury which had been prevented from hearing and considering relevant mitigating evidence in the absence of a constitutionally voluntary waiver by the defendant and record evidence of the defendant's competency to execute a voluntary waiver of constitutional rights.

First Amended Petition, doc.no. 15, at p.16. Petitioner reasons that there was no record evidence establishing that he voluntarily waived his right to present mitigating evidence, or that he was even competent to execute a voluntary waiver of constitutional rights, while there was evidence giving rise to an inference of his incompetence. As a result, substantial mitigating evidence was never presented or even proffered, thereby creating a risk of arbitrary and capricious infliction of the death penalty in violation of the Eighth and Fourteenth Amendments.

The Court is not persuaded by petitioner's argument that he fairly presented the substance of his claim in his sixth proposition of law on direct appeal to the Ohio Supreme Court. The argument presented in petitioner's sixth proposition of law was as follows:

The Eighth Amendment to the U.S. Constitution Precludes a State from Imposing a Sentence of Death Unless the Sentencing Authority Actually Considers All Relevant Evidence in Mitigation. Consequently, A Capital Defendant Cannot Interpose his Sixth Amendment Right to Self Representation as a Bar to Introduction of Mitigating Evidence.

Brief of Defendant–Appellant, J.A. Vol. III, Exh.12, at 45. The body of petitioner's argument in support of his sixth proposition of law was focused on whether a capital defendant may, consistent with the Eighth Amendment's proscription against the arbitrary and capricious infliction of the death penalty, ever waive the presentation of mitigating evidence. Petitioner went on to argue that a capital defendant's Sixth Amendment right to control his own defense should not be allowed to "trump" the Eighth Amendment proscription against the arbitrary and capricious infliction of the death penalty. Aside from a passing reference to the general requirement that waivers of constitutional rights be knowing and voluntary, nowhere in his sixth proposition of law did petitioner discuss the arguments set forth in habeas claim six—namely, that there was no record evidence establishing that he voluntarily waived his right to present mitigating evidence, or that he was even competent to execute a voluntary waiver of constitutional rights, thereby giving rise to the risk of arbitrary and capricious infliction of the death penalty. In contrast, petitioner argued in his sixth proposition of law that the risk of arbitrary and capricious infliction of the death penalty was the result—not of the absence of a competent, voluntary waiver of mitigation—but of petitioner's desire, consistent with the Sixth Amendment, to control his own de-

fense.[5] Thus, the legal argument presented in petitioner's sixth proposition of law was separate and distinct from the legal argument presented in petitioner's sixth claim for relief before this Court.

Nor is the Court persuaded that petitioner fairly presented the substance of his sixth claim for relief in his eighth proposition of law on direct appeal. The crux of petitioner's sixth claim for relief is that the jury was prevented from hearing and considering relevant mitigating evidence, even though there was no record evidence demonstrating a voluntary waiver of mitigation or that petitioner was even competent to execute a valid waiver, thereby creating a risk of the arbitrary and capricious infliction of the death penalty. In other words, petitioner challenges the Eighth Amendment proscription against arbitrary and capricious infliction of the death penalty *in the context* of a record that purportedly does not demonstrate a voluntary waiver of mitigation or competency on petitioner's part to execute such a waiver. Those two concepts are not presented in petitioner's eighth proposition of law. In his eighth proposition of law on direct appeal to the Supreme Court of Ohio, petitioner argued:

> If a person attempts to forego capital mitigation proceedings, a trial court must determine on the record if the person has the capacity to appreciate his position and make a rational choice with respect to presenting or waiving mitigation, *State v. Berry,* 80 Ohio St.3d 371, 686 N.E.2d 1097 (1997), as well as if the decision is knowingly and voluntarily made.

Brief of Defendant–Appellant, J.A. Vol.III, Exh.12, at 58. The body of petitioner's argument focused on requiring, under these circumstances, the trial court to de-

---

**5.** In fact, petitioner's sixth proposition of law on direct appeal mirrors petitioner's seventh claim for relief before this Court.

termine on the record that the defendant is competent to execute such a waiver and that the waiver is knowingly and voluntarily made. Nowhere in his argument did petitioner link the absence of record evidence demonstrating a competent, voluntary waiver of mitigation to the risk of arbitrary and capricious infliction of the death penalty. That is the precise argument raised in petitioner's sixth claim for relief; unfortunately, that precise argument simply was not presented to the state courts.

For the foregoing reasons, the Court is constrained to find that the arguments presented in petitioner's sixth claim for relief were not fairly presented to the state courts. Petitioner is not entitled to habeas corpus review absent showing of cause for his failure to fairly present the claim and actual prejudice from the alleged error. *See Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Petitioner has demonstrated neither. That being so, the Court concludes that petitioner has waived his sixth claim for relief. Respondent's motion to dismiss claim six is granted.

### D. *Claim Nine—Failure of Trial Court to Order Psychiatric Evaluation of Petitioner*

Petitioner argues in his ninth claim for relief that the trial court erred in failing to order a psychiatric evaluation to determine if petitioner was competent to stand trial and competent to waive the presentation of all mitigating evidence. The essence of petitioner's argument is that the trial court has a duty to inquire into a criminal defendant's competency when, as in petitioner's case, the defendant engages in behavior that calls his competency into question. Petitioner contends that throughout the trial, he engaged in behavior that created substantial doubt as to his competency. Respondent argues that petitioner's claim is procedurally barred because petitioner raised his claim in postconviction proceedings, where the state courts denied it on the basis of *res judicata.* Petitioner insists that the Ohio Supreme Court addressed this precise issue on direct appeal, that petitioner subsequently raised it again in his motion for reconsideration, and that petitioner raised it yet again in his postconviction action along with evidence *dehors* the record.

The Court need not address each of petitioner's arguments because it is obvious from the record that the Ohio Supreme Court addressed this issue on the merits. With respect to the validity of petitioner's waiver of the right to present mitigating evidence, the Ohio Supreme Court discussed in considerable detail whether a trial court must require a competency evaluation whenever a capital defendant declines to present evidence in mitigation, and whether the trial court in this case should have required a competency evaluation in light of petitioner's bizarre behavior in court petitioner's decision to forego the presentation of evidence in mitigation. *Cowans,* 87 Ohio St.3d at 81–85, 717 N.E.2d 298; J.A. Vol.III, Exh.14, at 68–70. Respondent's motion to dismiss petitioner's ninth claim for relief as procedurally defaulted is denied.

### E. *Claim Ten—Petitioner is Actually Innocent*

Petitioner argues in his tenth claim for relief that he is actually innocent of the underlying charges for which he was convicted. Specifically, petitioner argues that genetic testing on biological evidence collected from the crime scene will exclude him as a donor. Petitioner suggests that, since the State always argued that he was the lone offender, it suppressed material exculpatory evidence in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *Kyles v. Whitley,* 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d

490 (1995). Petitioner goes on to argue that, had the jury been presented with genetic testing that excluded petitioner as the donor of the biological evidence collected from the victim's house, there is a reasonable probability that the result of the proceeding would have been different. In the context of his actual innocence claim, petitioner renews his challenge to the manner in which the state collected and matched to petitioner a fingerprint that was found at the crime scene, in light of the fact that the fingerprint was the only direct evidence against petitioner in this case and the fact that there were other latent prints recovered from the crime scene that were never identified.

Respondent argues that petitioner's actual innocence claim is procedurally barred because it was never presented in any Ohio courts. Petitioner essentially concedes he never presented this claim to the state courts, but argues that he was not required to present this claim because it will not be ripe until the genetic testing [6] has been completed and the record has been supplemented with those test results as well as expert testimony regarding the testimony suggesting that a fingerprint from the crime scene matched petitioner's prints. Petitioner argues that there is no state rule requiring a claim to be litigated before it is ripe, and reminds that the state courts denied his motion to conduct discovery to develop this claim.

In response to petitioner's assertion of a *Brady* violation, respondent argues that petitioner has not formally raised a *Brady* claim in this habeas corpus action, and, at this point, has failed to proffer any exculpatory material that was allegedly suppressed by the State in violation of *Brady*. Respondent concludes that, until petitioner argues and proves that exculpatory evidence was suppressed, his claim remains procedurally defaulted.

Because the genetic testing ordered by this Court had not been completed when this issue was briefed, the Court is not in a position to determine whether petitioner's tenth claim for relief is procedurally defaulted. That said, the Court hastens to note that the odds are certainly stacked against petitioner. For one thing, as respondent points out, petitioner suggests for the very first time in his memorandum in opposition that he may be asserting a *Brady* claim. Obscured in the arguments supporting his claim of actual innocence, petitioner suggests that the state suppressed material, exculpatory evidence in violation of *Brady v. Maryland, supra,* by not testing or turning over to petitioner the biological evidence recovered from the crime scene. Petitioner did not include a *Brady* claim in either his initial habeas corpus petition or his first amended habeas corpus petition, and the Court is not inclined to construe as properly before it a *Brady* claim that petitioner inserted and raised only in his memorandum in opposition to the respondent's motion to dismiss procedurally defaulted claims.

■ Petitioner's tenth claim for relief states a claim of actual innocence, and free-standing claims of actual innocence typically are not cognizable in federal habeas corpus, *Herrera v. Collins,* 506 U.S. 390, 416, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). Of course, federal habeas relief may be warranted on a free-standing claim of actual innocence in a capital case, where the defendant presents a "truly persuasive demonstration of actual innocence." *Id.* at 417, 113 S.Ct. 853. The threshold showing

---

**6.** The Court has ordered that genetic testing be conducted on blood spots collected from the victim's kitchen floor and blood collected from the victim's shoulder for purposes of comparing the DNA composition of that blood to petitioner's DNA composition. (Doc.Nos. 14, 18, and 21).

justifying relief under those circumstances is "extraordinarily high." *Id.*

In addition to the fact that it may not be cognizable in federal habeas corpus, petitioner's tenth claim for relief has never been presented to the state courts. Petitioner argues that he was excused from presenting the claim to the state courts, because the claim was never ripe due to the state courts' denial of petitioner's request for discovery to develop this claim. The only authority of which this Court is aware suggesting that a claim may be raised for the first time in habeas corpus because it was not ripe earlier deals with a claim of incompetency to be executed; the rationale is that a capital defendant's claim that he is incompetent to be executed will not be ripe until the execution becomes imminent. *Stewart v. Martinez–Villareal,* 523 U.S. 637, 118 S.Ct. 1618, 140 L.Ed.2d 849 (1998); *Fautenberry v. Mitchell,* Case No. C–1–00–332, 2001 WL 1763438 (S.D.Ohio Dec. 26, 2001), *28–29.

■ Although the odds are certainly stacked against finding that petitioner's tenth claim for relief is properly before the Court, the Court is reluctant to make any decision about whether petitioner's tenth claim for relief is cognizable, procedurally defaulted, or in need of being amended until the parties brief the relevance, if any, of the DNA to this issue. Procedural default is an affirmative defense that the respondent bears the burden of proving. *See e.g., Magouirk v. Phillips,* 144 F.3d 348, 357 (5th Cir.1998)("procedural default is an affirmative defense that may be waived if the state fails to raise the defense in its pleadings.") Thus, respondent bears the burden of proving that petitioner's actual innocence claim is barred by procedural default. Because the current record with respect to this matter is incomplete, respondent cannot sustain her burden of proving the existence of a procedural default at this time. Accordingly, respondent's motion to dismiss petitioner's tenth claim for relief as procedurally defaulted will be denied at this time, subject to reconsideration following the completion of the DNA testing ordered by this Court.

### F. Claim Eleven—Unconstitutionality of Death by Electrocution

■ Petitioner argued in his eleventh claim for relief that a sentence of death by electrocution violates the Eighth Amendment proscription against cruel and unusual punishment. Respondent argued that petitioner's claim was procedurally barred under Ohio's doctrine of *res judicata* because petitioner raised it for the first time in postconviction instead of on direct appeal. Petitioner now concedes that his eleventh claim is procedurally defaulted and he expressly withdraws it from his petition. Respondent's motion to dismiss claim eleven, accordingly, is granted.[7]

### V. Conclusion

For the foregoing reasons, respondent's motion to dismiss claims on the basis of procedural default is GRANTED as to claims 2(c), 2(f), 2(g), 6, and 11; and DENIED as to claims 1, 2(b), 9, and 10.

---

7. In any event, the Ohio Legislature has enacted a law making death by lethal injection Ohio's sole method of execution. R.C. § 2949.22. That law became effective November 21, 2001. Accordingly, petitioner's eleventh ground for relief, regardless of whether it was procedurally defaulted, is moot. *See* *Sawyer v. Whitley,* 945 F.2d 812, 814 n. 1 (5th Cir.1991)(rejecting Eighth Amendment challenge against electrocution as moot following enactment by of law changing method of execution from electrocution to lethal injection), *aff'd,* 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992).